City of Philadelphia *v.* The Union Burial Ground Society of the City and County of Philadelphia.

*Taxation—Exemption from taxation—Municipal assessment for cost of laying water pipe—Cemeteries—Constitutional law.*

A cemetery company is liable for a municipal assessment for the cost of laying water pipe under a street upon which the cemetery abuts.

The constitutional exemption relates to taxes proper, or general public contributions, levied and collected by the state, or by its authorized municipal agencies for general governmental purposes, as distinguished from peculiar forms of taxation or special assessments imposed upon property within limited areas, by which the property assessed is specially and peculiarly benefited and enhanced in value to an amount at least equal to the assessment.

Argued Jan. 21, 1896.    Appeal, No. 186, July T., 1895, by defendant, from order of C. P. No. 1, Phila. Co., Dec. T., 1889, No. 605, making absolute a rule for judgment for want of a sufficient affidavit of defense.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.    WILLIAMS, J., dissents. ·

Scire facias sur municipal claim.

The claim was as follows :

" The City of Philadelphia hereby files its claim against all that certain lot or piece of ground used as the Union Burial Ground, situate on the west side of Parker street, extending northward from the north side of Federal street in 2nd ward of City of Philadelphia containing in front or breadth on said Parker street 376 feet $\frac{14}{100}$ of a foot and extending of that width in length or depth westwardly along the north side of Federal street 175 feet 6 inches to east side of Sixth street for work done and materials furnished by said city in laying water pipe in front of said lot in Parker street, and duly assessed and charged as follows to wit," etc.

The affidavit of defense was as follows :

James Gillingham being duly affirmed doth say : I am the president of the Union Burial Ground Society of the city and county of Philadelphia, the defendant in the above case.    I am advised that the defendant has a just, true and legal defense to the claim filed, the same being of the following nature and character, to wit : The said society was incorporated under the law of the state of Pennsylvania on the 12th day of January, 1828.    That according to the articles of incorporation it is provided, inter alia.

" ARTICLE 11.    Each member shall be entitled to one lot and no more, and shall receive a certificate deed for the same, signed by the president, and attested by the secretary of the society, and the seal of the society affixed thereto ; and shall have and hold the same as a cemetery or burial place to his or her heirs or assigns forever, and to be used for no other purpose ; but always subject to the constitution and by-laws of the society.

" ART. 12.    The form of the certificate deed shall be such as may be prescribed by the by-laws.

" ART. 13. Each member's lot or cemetery shall be determined by ballot; that is, there, shall be as many tickets made out, numbered and rolled or folded up and put in a box, as there are members, and each member entitled to a lot or his or her proxy draw, and the number that shall be on the ticket so drawn shall be the number of his or her lot; nevertheless, members may from motives of convenience and by mutual consent exchange their lots or cemeteries with each other.

" ART. 16. A map or plan of the whole ground shall be drawn, showing the number and situation of each member's lot or cemetery; also the order of rows for the portion of ground allotted to for the interment of nonmembers, which map or plan, when approved and adopted by the society, shall remain unalterable forever."

And in pursuance of the power vested in them the society passed the following by-laws:

" ARTICLE II.

" *Payments for the Lots of Cemeteries.*

" The purchase money for each cemetery or burial place shall be assessed by four instalments, at two dollars and fifty cents for each instalment. The first instalment shall be payable on the first day of November, 1827; the second instalment on the first day of February, 1828; the third instalment on the first day of May, 1828; and the fourth instalment on the first day of August, 1828. This, however, shall not prevent the subscribers from paying from time to time such sum or sums of money to the treasurer, as may be to them convenient, previous to any instalment; such payment shall stand in lieu thereof. Any member failing in the payment of any of the instalments shall forfeit the former payment or payments, and his or her lot or cemetery shall revert back to the society.

" ARTICLE IX.

" *Of the Contingent Fund.*

" A fund shall be raised to defray the contingent expenses of the society; such as room hire for the meetings, books, paper, blanks, seal, etc., etc.; and to meet such expenditures each member shall pay the sum of fifty cents."

That in pursuance of said constitution the tract of ground

against which this lien is filed was immediately after the incorporation laid off in burial lots in accordance with plan hereto annexed to this affidavit and made part hereof, and the same allotted or drawn by the members, and the said lots are now held by the said persons or their heirs or assigns, and are held exclusively for the purpose of burial; that the water pipe laid in said Parker street is of no use to the said burial ground, nor any improvement thereto, as said burial ground now has, and has had for over twenty years past, received water from the water pipes laid on Federal street; that said society is not managed for private or corporate profit, and no portion of said tract of ground is held for private or corporate profit, all of the above lots as above set forth having been conveyed to members for the purpose of burial, in whom the same or their heirs or assigns is now vested.

Deponent is further advised that plaintiff cannot maintain the lien for the further reason that the state of Pennsylvania, by act of assembly approved April 27, 1852, P. L. 460, section 16, provided " that the property now owned for the purpose of interment by the . . . . Union Burial Ground Association be, and the same are hereby exempted from taxation, excepting for state purposes."

That the Union Burial Ground Association referred to in the said act of assembly is this defendant.

All of which facts are true, and which defendant expects to be able to prove on the trial of this cause.

*Error assigned* was order making absolute the rule for judgment.

*Alfred D. Wiler*, for appellant.—Under the statutes a burial ground is on a different footing, so far as regards exemption, from a church : Act of April 16, 1838, P. L. 525 ; Act of April 27, 1852, P. L. 460 ; Act of April 5, 1859, P. L. 363 ; Act of May 12, 1871, P. L. 771 ; County v. Lehigh Coal & Navigation Co., 75 Pa. 461 ; Act of May 14, 1874, P. L. 158.

The city of Philadelphia in supplying water is exercising the functions of a private corporation and, therefore, technically speaking, a claim filed by it for water pipe cannot be considered in the nature of a claim conferring a benefit to the property :

Broad Street, 165 Pa. 475; Girard Fire Ins. v. Philadelphia, 88 Pa. 393; Western Saving Fund Society v. City, 31 Pa. 175; Wheeler v. City, 77 Pa. 338; Smith v. City, 81 Pa. 38.

It is submitted that the decision of the court in Broad Street, 165 Pa. 475, does not apply to this case; but it is governed by Philadelphia v. Church of St. James, 134 Pa. 207, which specifically decided that a lien for water pipe could not be maintained against the defendant.

*James Alcorn*, assistant city solicitor, with him *David Lavis* and *John L. Kinsey*, city solicitor, for appellee.—The case of Broad Street, reported in 165 Pa. 475, is a full answer to the appellant's case so far as it relates to the claim for exemption under the acts of assembly and the constitution of the state of Pennsylvania, cited in appellant's paper-book.

Were it necessary for this case, in view of the decision of the court in Broad Street, supra, to argue that sections 1 and 2, article IX., of the constitution, repealed all special exemptions from taxation, a reference to the line of cases, such as City v. Masonic Home, 160 Pa. 572; Wagner Free Institute v. Philadelphia, 132 Pa. 612; Philadelphia v. Pennsylvania Hospital, 134 Pa. 171, would be sufficient.

Under the constitution of the state of Pennsylvania, the legislature may repeal any exemption of property from taxation, contained in a charter since 1857, and such repeal may be made by general enactment: section 10, article XVI., constitution 1874.

A claim for water pipe is a municipal assessment: Phila v. Church of St. James, 134 Pa. 207. So is a claim for paving: Broad Street, 165 Pa. 475. So is a claim for sewer: City v. Michener, 118 Pa. 535.

The appellant may remove the bodies and dispose of its burial ground in the same manner indicated in the opinion of this court in the City of York School District's Appeal, 169 Pa. 70.

By the act of May 26, 1891, sec. 1, P. L. 118, incorporated cemetery or burial associations are authorized to purchase other grounds, and to sell and convey in fee simple such portions of their land owned by them, not used or conveyed by them for burial purposes, or which may have been reconveyed to them.

By the act of June 6, 1893, P. L. 325, this authority is re-

affirmed and amended by extending it to any incorporated or unincorporated church, cemetery or burial associations.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:    .

We feel obliged to hold that the question at issue in this case is res adjudicata. The distinction between municipal assessments for the payment of local improvements, and general taxes intended for general governmental purposes, as they are affected by exemption laws, was fully pointed out and discussed in the opinion delivered by Mr. Chief Justice STERRETT in the case of Broad Street, 165 Pa. 475. It was there said that, " The constitutional exemption relates to taxes proper, or general public contributions, levied and collected by the state or by its authorized municipal agencies for general governmental purposes, as distinguished from peculiar forms of taxation or special assessments imposed upon property, within limited areas, by which the property assessed is specially and peculiarly benefited and enhanced in value to an amount at least equal to the assessment. There is such an obvious distinction between all forms of general taxation and this species of local or special taxation that we can not think the latter was intended to be within the constitutional exemption." After citing a number of decisions of our own court, and especially a decision of the Supreme Court of the United States, Illinois Central Railroad Co. v. Decatur, 147 U. S. 190, 197, wherein it is held that an exemption from taxation is to be taken as an exemption from the burden of ordinary taxes, and does not relieve from the obligation to pay special assessments imposed to pay for local improvements and charged upon contiguous property upon the theory that it is benefited thereby, the chief justice concludes as follows: " The rule thus formulated not only rests upon an undoubtedly sound principle, but it is abundantly sustained by an almost unbroken line of authorities in nearly all of our sister states, several of which authorities are cited and commented on in the opinion referred to. We are therefore of opinion that special municipal assessments, such as that in question, are not within the constitutional exemption above quoted." The improvement in this case was the pavement of a street in front of a church property and we held that it was not exempted. This decision received the unanimous assent of the members of this court and has not

been departed from. On the contrary in the case of New Castle City v. Jackson, 172 Pa. 86, which was heard in the western district at October term, 1895, we followed the Broad Street case, and applied its ruling to an assessment upon a graveyard property for paving the street. We are unable to make a distinction between a graveyard and a church property in reference to this subject, nor do we think a distinction can be maintained between the paving of a street and the laying of water pipe. They are both municipal improvements of a local and special character and, theoretically at least, each must be supposed to confer a benefit upon the adjacent property. The fundamental reason for withholding exemption, is, that such assessments are not general taxes, but are special and local, confined to limited areas, and to property adjacent to the improvement. In Michener v. City, 118 Pa. 535, we held that an owner could not defend against a municipal assessment for the cost of laying a sewer, on the ground that it was not a private benefit to him, nor a matter of necessity to the public. The city councils were necessarily the judges of the necessity of the improvement, and no other standard could be set up without the greatest confusion. Whether the improvement be a sewer, as in that case, or a water pipe, as in this, can make no difference in the governing principle. We do not see how we could reverse this case without reversing our own previous decisions in the cases cited, and this we are not willing to do.

In the two cases, Philadelphia v. Church of St. James, 134 Pa. 207, and Philadelphia v. Pennsylvania Hospital for the Insane, 154 Pa. 9, it was substantially held that the properties there in question were exempt from an assessment for the cost of a water pipe laid in the street in front of them. In neither of them however was the question involved in the present case raised, considered or decided. In both, the only question discussed and decided, was, whether the property was embraced within the description of properties exempt from general taxation. In the first the property was a church, a church school and a church yard, and in a per curiam of one sentence, we said that the averments in the affidavit of defense must be taken as true, and therefore no error was committed in refusing judgment. In the other case there was also a per curiam opinion in which was very briefly discussed, the question whether such

a property, to wit, the buildings and grounds of the insane department of the Pennsylvania Hospital, were a purely public charity. Holding the affirmative of that proposition we ruled that the demurrer to the plea which described the property, was bad, and sustained the court below in so deciding it. It is also to be said that both of these cases occurred prior to the case of Broad Street, supra, and if they were in essential conflict with the decision in that case, we would be obliged to hold that they were overruled. But there was no such conflict, as they were both entirely silent as to the question decided in the Broad Street case. We cannot therefore regard them as of any force in the present contention.

Judgment affirmed.

MR. JUSTICE WILLIAMS, dissenting.

This appeal is from a judgment entered in the court below for want of a sufficient affidavit of defense. To determine the sufficiency of the affidavit it is important to consider in the first place the character of the plaintiff's claim; next the facts set out in the affidavit as the ground of defense; and finally, the rules of law applicable to the facts so averred.

The plaintiff's claim is upon a municipal lien filed against a plot of ground now under the care of, and at one time many years ago, belonging to, the defendant society. This lien was filed for the cost of laying a water pipe or street main along the street on which the burial ground fronts.

The affidavit alleges that the money charged to the defendant by the city for laying its own water pipes is a tax; and that as the burial ground is not held or used for private or for corporate profit it is exempt by law from all city taxes. It further sets out that the land once owned by the defendant was laid out some sixty-five years ago into burial and vault lots several hundreds in number, and that these lots have been sold and conveyed in fee to individuals who own them and use them exclusively as places of burial; and that these lots are exempt from taxation by the provision of the act of April 5, 1859. We come now to glance at the legal questions thus raised. First, is the assessed cost of laying water pipe a tax? The assessment is made under authority of the ordinance of June 2, 1866, which provides that whenever the city lays pipes for the convey-

ance of water along any street "the owners of the ground in front whereof it shall be laid shall pay for the expense thereof the sum of one dollar for each foot front of his ground upon such street: " Phila. City Dig. 176. This is a tax for a special purpose. The pipe is not laid in the interest of the lot owner, or of the general public, but of the city, the owner of the water works. It serves the convenience of water buyers as well as of the city, the water seller, but it is not classed among the improvements for which benefits may be assessed against a lot holder by any act of assembly. The city can file a municipal lien to secure the assessment made against city property for the cost of any municipal improvement including opening and grading of streets, paving and curbing, sewering, laying of foot walks, and for " benefits," resulting directly from such improvements, but the basis on which such assessments must stand is that they represent the cost of an improvement made to the property assessed, by the city, for which the owner should pay. It may also file a lien to secure " the taxes, rates and levies " assessed by it. The lien filed in this case rests on no appraisement of benefits by viewers. The laying of water pipe has never been treated as such a public improvement as authorizes or requires an ascertainment of the benefit resulting to the lot owner. The amount to be paid is fixed by ordinance. The object of the tax is to reimburse the city for a specific expenditure made largely for its own benefit and to increase its own profits as a dealer in water on a gigantic scale. The lien is therefore entered to enforce a tax and not to collect the assessed value of a betterment. In view of this fact is the burial ground exempt? The constitution expressly authorizes the exemption from taxation of all " burial grounds not held or used for private profit." The legislature by the act of May 14, 1874, proceded under that authority to declare all burial grounds not held or used for private or corporate profit exempt from all local taxation.

The affidavit of defense alleges that this burial ground is not held or used for private or corporate profit. If this be true then a good defense is shown. The lien being for a tax, and the ground being exempt by law from taxation there can be no recovery. But this ground is now owned by some hundreds of persons, each holding his own lot in fee, and using it solely as a place for burial. By the act of April 5, 1859, it is provided

that "whenever any lot or lots or the right of sepulture therein shall be granted to any person or family by any incorporated cemetery company, or church or religious congregation, within any common enclosure made by such company, church or congregation, as and for the perpetual burial of the dead, any and all lots so disposed of or used for burial shall hereafter be free and exempt from all taxation so long as the same shall be used or held only for the purpose of sepulture." The act of April 8, 1873, passed for the express purpose of subjecting all real estate to taxation saves burial lots by a proviso declaring that "no burial lots sold to individuals for burial of the dead shall be liable to levy and sale for any taxes whatsoever." Not one of these lots could be legally assessed for taxes of any description. Still in this proceeding it is proposed to assess them all in spite both of the act of 1859, which protects the lot owner, and the act of 1874, which protects the society. What is still worse is that it is proposed to do this without notice to the lot owners who have for more than half a century held and used their lots for the burial of their dead. Some thousands of sleepers are resting in these little sacred enclosures. Over their remains stand the head stones and monuments which the willing hands, prompted by the loving hearts of survivors, have reared to mark the spot where their lost ones sleep, and to bear the name of the sleeper. Though they have not been owned by the corporation for two generations they are within the "common enclosure," and are as it is claimed subject to the lien which has been filed against it. It is proposed to sell them all in a lump, upon a lien for a tax from which each and every one of them is exempt, and deliver to the highest bidder at a sheriff's sale the graves of two generations with all that pertains to them.

The suggestion is as shocking to my sense of justice as it is to my sensibilities. So far we have considered the subject as standing on ground untouched by precedent, but it is covered by our own cases. In Philadelphia v. St. James Church, 134 Pa. 207, we held that a church, which stands on no higher ground so far as its claim to exemption is concerned, is exempt from the cost of a water pipe laid in the adjoining street, and that a lien entered therefor cannot be enforced. In Philadelphia v. The Penna. Hospital for the Insane, 154 Pa. 9, we held the hospital to be exempt from the same charge viz : the cost

of laying a water pipe in the street in front of the hospital grounds. The words used by the chief justice in a per curiam disposing of the last case are " we think the hospital is exempt from the species of taxation attempted to be imposed in this case." We have held a hospital liable to repair foot walks in front of its property because of the duty of a property owner to the public. This duty we said could be enforced by the exercise of the police power of the municipality, but so far we have carefully distinguished between a charge resting on a duty to the general public, and a charge made by virtue of the taxing power, and serving no purpose but to yield revenue to the authority imposing it. Upon general principles, and upon the authority of our own very recent cases, I would reverse this judgment.