[No. 8660. Department Two. June 14, 1910.]

*In re* SIXTH AVENUE WEST, SEATTLE.

THE CITY OF SEATTLE, *Respondent,* v. MOUNT PLEASANT CEMETERY COMPANY *et al., Appellants.*[1]

CEMETERIES—EXEMPTION OF LANDS—MUNICIPAL CORPORATIONS—LOCAL ASSESSMENTS. A cemetery company organized as a private corporation, which has sold burial lots to be used for that purpose only, is not entitled to the exemption of its unsold property from local improvement assessments, under Rem. & Bal. Code, §§ 3640, 3645, exempting from taxation the lands of cemetery assocations incorporated or conducted under the law relating to charitable associations.

SAME—TAXATION. Rem. & Bal. Code, § 9098, exempting from general taxation all lands used exclusively for burying grounds or cemeteries, does not exempt such lands from assessments for local improvements.

SAME—EXEMPTIONS—STATUTES—CONSTRUCTION. Rem. & Bal. Code, § 3640, providing that whenever any part of a burying ground, established by individuals associating for that purpose, shall have been designated and appropriated by the proprietor as the burying ground of any particular person or family, it shall not be liable to be taken or disposed of for any tax or debt whatever, is broad enough to exempt from local assessments the burial lots in a cemetery deeded to private owners, to be used exclusively for burial purposes, although the cemetery is owned by a cemetery company organized as a private corporation for profit, and not as a charitable association as contemplated by Id., § 3639, authorizing the association of individuals for that purpose.

MUNICIPAL CORPORATIONS—LOCAL ASSESSMENTS—APPEAL—REVIEW—DISCRETION. Upon an appeal from the confirmation of an assessment for a local improvement, findings as to the boundaries of the lands benefited, and the amount of the benefits, will not be disturbed in the absence of any abuse of discretion.

SAME—DECISION. Upon appeal from the confirmation of an assessment for a local improvement, where about half of the land was exempt, and the proportion appears of record, the supreme court will order a proportionate reduction.

APPEAL—DECISIONS REVIEWABLE—DEFAULT JUDGMENT. A judgment rendered by default against a defendant who has not appeared is appealable.

[1]Reported in 109 Pac. 1052.

JUDGMENTS—DEFAULTS. A default cannot be taken against non-appearing defendants for a sum greater than that demanded in the complaint.

MUNICIPAL CORPORATIONS—LOCAL ASSESSMENTS—PROCEEDINGS—DEFAULT JUDGMENTS—INCREASE OF ASSESSMENT. In proceedings by a city to levy assessments for a local improvement, where eminent domain commissioners have made up an assessment roll and notice has been given to a property owner of the amount of benefits assessed against his property, and the owner files no objections and does not appear, the court in confirming the assessment has no authority to increase the same; since its order has the effect of a default judgment, the hearing being conducted as in other proceedings, under Rem. & Bal. Code, §§ 7791-7797.

Appeals from a judgment of the superior court for King county, Tallman, J., entered January 4, 1910, confirming a condemnation assessment roll for a local improvement, after a hearing on the merits before the court. Modified.

*H. R. Clise* (*C. K. Poe,* of counsel), for appellants.
*Scott Calhoun* and *Howard A. Hanson,* for respondent.

PARKER, J.—Under the eminent domain law, Rem. & Bal. Code, § 7768 *et seq.,* the city of Seattle is extending Sixth avenue west and charging the expense thereof by special assessment against the real property benefited thereby. Among the property so assessed, and for which assessments the trial court rendered judgment, is certain land belonging to the Mount Pleasant Cemetery Company, and also certain land belonging to the Washington Cremation Association. Judgment was rendered against the land of the cemetery company, upon a trial after its appearance, and judgment was rendered against the land of the cremation association by default, as it did not appear to resist the proposed assessment. Both judgments are brought here by separate appeals. We will notice them in the order named.

The assessment involved in the appeal of the cemetery company is for the sum of $2,811, charged in a lump sum as a

single assessment against certain land within the replat and the supplemental plat of "Mount Pleasant and Odd Fellows cemeteries." In the year 1895 and prior thereto, part of the land here involved was included in the original Mount Pleasant cemetery plat, and also in the Odd Fellows cemetery plat. In that year the appellant cemetery company acquired this land, and since then has acquired the other land here involved, and has replatted the whole with other lands as above indicated. Since acquiring this land the cemetery company has sold and conveyed a great many burial lots within the land charged with this assessment. The conveyances are all in the form following:

"This Indenture, made this ——— day of ———, A. D. ———, between the Mount Pleasant Cemetery Company, the party of the first part, and ——————, the party of the second part,

"Witnesseth, That the said party of the first part, for and in consideration of the sum of ——— Dollars, lawful money of the United States of America, to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does by these presents grant, bargain and sell unto the said party of the second part, and to his heirs, for the purpose of sepulture only, for members of his family, ——————— Lot No. ———, in Section ——— in the Replat of Mount Pleasant Cemetery, in the County of King and State of Washington.

"And the party of the second part, for himself and his heirs, executors and administrators, doth covenant to and with said party of the first part, its successors and assigns, that in consideration of the foregoing grant he will not, neither will they nor any of them suffer said lot or piece of ground to be used for other purposes than those above named, nor will he nor they nor any of them transfer the same nor any part thereof, except upon the assent of said party of the first part, its successors or assigns, and that he and those claiming under or through him will be governed in the management of said lot by all rules and regulations imposed by said party of the first part, its successors and assigns, for the proper management of the cemetery.

"In Witness Whereof, the said party of the first part has

hereunto set its hand and seal the day and year first above written.

"The Mount Pleasant Cemetery Company,

"By ———————, President   (Seal)

"Attest:

———————, Secretary   (Seal)."

Under the rights acquired by these deeds hundreds of interments have been made in the lots so conveyed. It appears that the cemetery company is a private corporation and conducts this cemetery for the purpose of earning dividends. The technical legal character of the cemetery company as a corporation is not made clear by this record, but it is in any event plain that it is not incorporated or conducted without a view to profit under the laws relating to charitable associations, as cemeteries may be incorporated and conducted under the act of 1899, Rem. & Bal. Code, § 3643 *et seq.* It does not appear from the record that the cemetery company acquired any of the land here involved in trust to be used or sold for any specific purpose. We will notice other facts as may be necessary in our discussion of the questions involved.

It is contended by learned counsel for the cemetery company that its property is exempt from special assessment. To support this view our attention is called to the statutes exempting from taxation and execution burial lots in cemeteries, and also exempting from taxation the land of cemetery corporations under certain conditions. Rem. & Bal. Code, §§ 3640, 3645. The cemetery company disclaims any interest in the lots it has conveyed, save in having the restrictions upon their use observed; so its principal interest in the question of exemption is in having its unsold lands exempt. The fact that appellant is a private corporation conducting this cemetery for profit, we think is a conclusive answer to its claim that its unsold land is exempt from special assessment. It is plain that the sections of the statute above mentioned do not accord any such exemption to land held as this is. It is only cemetery corporations organized and conducted without a view to profit that have any exemption from taxation upon

their unsold lands by virtue of these sections. As to whether or not such exemption would extend to special assessments we need not now decide. Our attention is also called to § 9098, Rem. & Bal. Code, which provides that, "All property described in this section, to the extent herein limited, shall be exempt from taxation, that is to say: First, All lands used exclusively for public burying grounds or cemeteries, . . . " This section is a part of the general revenue law of the state and relates only to general taxation. The rule seems to be thoroughly established that statutes exempting particular property from taxation do not apply to special assessments unless there are words in the statute clearly indicating such an intention—that is, the word "taxation" standing alone does not apply to special assessments in such statutes. 1 Page and Jones, Taxation by Assessments, § 592; Hamilton, Special Assessments, § 312. We are of the opinion that our laws do not exempt the land here involved, not conveyed by the deeds to burial lot owners, from special assessments.

It is also contended that, even though the remaining land of the cemetery company be not subject to assessment, the learned trial court erred in adjudging the charge of $2,811 as a single assessment against the conveyed lots and the remaining land of the cemetery company, it having, at the trial, objected to the assessment being so made. Learned counsel for the city contend that the deeds from the cemetery company to the several grantees do not convey the fee; hence, the land is still under one ownership, is therefore a single tract and assessable as such. Many authorities have been cited and elaborate arguments made touching the nature of the title passing to these grantees. We think, however, the solving of the question of whether or not these burial lots are exempt from assessment will determine the question as to the cemetery company's right to have its remaining land charged separately. If a burial lot conveyed to, and held by, the grantee "for the purpose of sepulture only, for the members

of his family," as these lots were conveyed and are held, is by law exempt from special assessment, then it necessarily follows that the cemetery company has the right to have the assessment upon its remaining land measured according to the benefits resulting to such land separately, and have the amount so assessed charged against such land separate from other land. It would clearly be erroneous and prejudicial to the rights of an owner to have his land assessed with other lands by charging the assessment against all as one tract, when the other lands are exempt from such assessment, upon the theory that the whole is assessable, even though such owner might have some interest in the exempt lands. In this case the learned trial court measured the benefits to the lands charged with this single assessment as a whole, upon the theory that the cemetery company is the owner thereof, and that none of the land is exempt from the assessment. It is plain that the assessment burden which would fall upon the exempt land, were it assessable, cannot be placed upon other land, except possibly by apportioning such burden equitably upon all the lands within the assessment district—in other words, by eliminating such exempt lands from all considera-tion in measuring the benefits. Prior to the act of 1899, the only statute relating directly to the organization of cemetery corporations and the exemption from taxation and execution of burial lots, was §§ 3639 and 3640 of Rem. & Bal. Code, which are as follows:

"Sec. 3639. Any number of individuals, in any portion of this state, may associate for the purpose of procuring and establishing a burying ground or place of sepulture; and, be-ing so associated, they shall, on complying with the provisions of this section, be a body politic and corporate, may choose a president and other officers, may enact by-laws for regulat-ing the affairs of such corporation not inconsistent with the laws of this state, and compel the observance thereof by suit-able penalties, may sue and be sued, and do all acts necessary and proper for the well-ordering of the affairs of such cor-poration: Provided, that, before any such association shall be entitled to the privileges granted in this section, they shall

lodge with the secretary of state a copy of their articles of association, and shall cause the same to be recorded in the records of the county where such burying ground is situated.

"Sec. 3640. Whenever any part of such burying ground shall have been designated and appropriated by the proprietors thereof as the burying place of any particular person or family, the same shall not be liable to be taken or disposed of by any warrant or execution, for any tax or debt whatever; nor shall the same be liable to be sold to satisfy the demands of creditors whenever the estate of such owner shall be insolvent."

This was the law at the time of the incorporation of the appellant cemetery company, and it appears to be in full force at the present time so far as the exemptions therein provided are concerned, though the act of 1899, Rem. & Bal. Code, § 3643 *et seq.*, provides for the organization of cemetery associations and the exemption from taxation under certain conditions of lands held thereby. This later law relates, however, to cemetery associations organized without any view to profit, as charitable associations are organized. The nature of the incorporation of this cemetery company renders the question somewhat involved, since it might be argued that these family burial lots are not in a cemetery owned by a corporation organized under § 3639 above quoted, since the exemptions provided in § 3640 refers to family burial grounds in such a cemetery. Notwithstanding there may be some question as to the technical legal status of this cemetery company as a corporation, in view of the manner and purpose of its platting and conveying these lots for the purpose of sepulture, only, for members of the families of the grantees, we conclude that the question of the exemption of the lots from special assessment is to be determined by the language of § 3640. It will be noticed that the exemption language of that section is very broad and comprehensive. It is that such family burial grounds "shall not be liable to be taken or disposed of by any warrant or execution for any tax or debt whatever." This language, it seems to us, is sufficiently com-

prehensive to include special assessments.  Many authorities
have been cited touching exemptions under statutes of similar
import, though none using this exact language.  And while
we recognize the general rule that a mere exemption from
"taxation" does not exempt from local assessments, each case
must largely depend upon the language of the statute giving
the exemption.  In view of the language of § 3640, we are of
the opinion that the lots conveyed by the cemetery company
by deeds in the form above quoted thereby became exempt
from special assessment as well as from general taxation.  The
following authorities lend support to this view:  *Olive Ceme-
tery Co. v. Philadelphia*, 93 Pa. St. 129, 39 Am. Rep. 732;
*Mt. Auburn Cemetery v. Cambridge*, 150 Mass. 12, 22 N. E.
66, 4 L. R. A. 836; *State ex rel. Oakland Cemetery Ass'n v.
St. Paul*, 36 Minn. 529, 32 N. W. 781; *Louisville v. Nevin*,
10 Bush. (Ky.) 549, 19 Am. Rep. 78; *Swan Point Cemetery
v. Tripp*, 14 R. I. 199; *Oakland Cemetery v. Yonkers*, 63
App. Div. 448, 71 N. Y. Supp. 783, affirmed by the Court of
Appeals, 182 N. Y. 564, 75 N. E. 1132.  It follows that the
cemetery company had the right to have its unsold land as-
sessed separately.  The cemetery company is not insisting
that the assessment be apportioned upon the platted tracts
of its unsold land according to the plat, so we need not pass
upon its rights in that regard.

It is further contended that the boundaries of the assess-
ment district were unreasonably extended so as to include
portions of this land belonging to the cemetery company not
benefited by the improvement; and also that the amount of
the assessment was, in any event, greater than the benefits re-
ceived.  After careful reading of all the evidence we cannot
say that there was an abuse of discretion in the determina-
tion of these matters, assuming for the moment that all of
the land, including the burial lots conveyed, was assessable,
this being the theory upon which the learned trial court
fixed the amount of the assessment.  It does not follow, how-
ever, that this whole sum of $2,811 can be lawfully charged

as an assessment against appellant's land which is not exempt. The remaining land of the cemetery company is chargeable only with such portion of this total sum as the benefits resulting thereto bear to the benefits which would result to the entire tract attempted to be assessed were none of it exempt. This being an appeal from a judgment of the superior court rendered in a cause triable in that court without a jury, and all of the evidence upon which that court disposed of the case being before us, we deem it our duty to determine the amount assessable against the land of the cemetery company which is not exempt. There appears to be no dispute or uncertainty as to the number and location of the lots the cemetery company has conveyed for family burial purposes. These lots are shown by a plat filed as an exhibit in the case, from which it appears that considerable more than half of the land involved attempted to be assessed, lying within six or seven hundred feet of the improvement, has been so conveyed; and hence, as we have seen, a considerably less than half of this land within that distance of the improvement is assessable. Other portions of the land charged with this assessment are apparently too remote from the improvement to be very materially benefited thereby, especially in view of other streets immediately adjacent thereto already dedicated. We find that $1,200 would be a fair proportion of the total attempted assessment of $2,811 to be charged against the land of the cemetery company, excluding lots sold for burial purposes.

We will now consider the appeal of the cremation association. It appears from the record that, upon the filing of the assessment roll by the eminent domain commissioners, they assessed the land of the cremation association at $130. Notice of hearing upon the roll being given in usual form, the cremation association did not file any objections thereto or appear at the hearing, when the court by its judgment raised the assessment from $130 to $420; thus in effect rendering a judgment by default for a greater sum than that charged

4—59 WASH.

upon the roll, and to which appellant was invited to file objections.

Learned counsel for the city moved to dismiss the appeal of the cremation association for want of proper assignment of error. It is plain from appellant's brief that it claims that the learned trial court was in error in rendering judgment against its land for an amount greater than the assessment, since it did not appear or offer objections to the roll, and the judgment was rendered by default. This court has held that a judgment rendered by default, against a defendant who has made no appearance in the case, is appealable. *Rhode Island Mtg. & Trust Co. v. Spokane*, 19 Wash. 616, 53 Pac. 1104. The motion must therefore be denied. It is elementary that the relief granted to the plaintiff in a case in which the defendant has not appeared connot exceed that which is demanded in the complaint. Such a judgment is clearly erroneous. *Bank of California v. Dyer*, 14 Wash. 279, 44 Pac. 534; 23 Cyc. 741.

The question then is, Is this rule applicable to this case? A review of the statute under which this proceeding is prosecuted shows clearly that it is a judicial proceeding. The determination of the court upon the confirmation of the assessment roll has the force of a judgment. Rem. & Bal. Code, § 7797. The eminent domain commissioners are required to make up the assessment roll and charge against each tract or parcel of land the amount assessed as special benefits thereto. Upon the filing of the roll, the court enters its order setting a time for hearing thereon, notice is then given to owners inviting them to file objections to the roll and advising them of the amount charged against their property. It is further provided that:

"Any person interested in any property assessed may file objections to such report at any time before the day set for hearing said roll. As to all property to the assessment of which objections are not filed as herein provided default may be entered and the assessment confirmed by the court."

There are certain other provisions indicating that the court may either raise or lower any assessment upon a given tract when the owner has appeared and filed objections, but there is nothing in the law to indicate that the court may raise an assessment upon any tract the owner of which has made no objection and has not appeared. It is further provided that, "The judgment of the court shall have the effect of a separate judgment as to each tract or parcel of land or other property assessed." It is also provided that the hearing shall be conducted as in other cases tried by the court without a jury. Rem. & Bal. Code, §§ 7791-7797. We think, under these provisions, this proceeding must be regarded as any other suit, and the rights of the property owners, who are in effect defendants therein, protected accordingly. We are clearly of the opinion that the court has no more authority in this proceeding than in any other suit or action to render a default judgment against a lot or tract for a larger sum than is charged upon the assessment roll. The roll is in effect the complaint, and if the property owner does not care to object to the assessment which it is thereby proposed to levy upon his property, he has all the rights of a defendant in an ordinary action who suffers a default judgment to be entered against him by not appearing or answering in the cause. We are of the opinion that the judgment against the property of the cremation association, assessing it more than the $130 charged against it upon the roll, was erroneous, and that appellant is entitled to have such judgment modified by reduction of the assessment to that sum.

We conclude that the judgment of the learned superior court must be modified as follows: *First*, the superior court is directed to modify its judgment by assessing against the land of the cemetery company, excluding the burial lots conveyed by it, the sum of $1,200, and no more. *Second*, the superior court is directed to modify its judgment by assessing against the land of the cremation association the sum of

$130, and no more.   The appellants will recover their costs in this court.

RUDKIN, C. J., MOUNT, DUNBAR, and CROW, JJ., concur.