[L. A. No. 11591. In Bank.—July 31, 1930.]

THE HOLLYWOOD CEMETERY ASSOCIATION (a Corporation), Appellant, v. N. T. POWELL, City Treasurer of the City of Los Angeles, et al., Respondents.

Porter & Sutton for Appellant.

Erwin P. Werner, City Attorney, Frederick Von Schrader, Deputy City Attorney, Arthur M. Ellis and Robert J. Stahl for Respondents.

James H. Howard, *Amicus Curiae,* for Respondents.

LANGDON, J.—This is an appeal by plaintiff from a judgment of the Superior Court of Los Angeles County in an action to apportion an assessment, enjoin a sale and deed, and to quiet title.

Plaintiff is a private corporation organized for profit, and having its principal place of business at Los Angeles, California. In 1901 it was the owner of a tract of land in Los Angeles, consisting of some sixty acres. This land it proceeded to subdivide for cemetery purposes into lots and blocks, with a number of walks and drives. A plat thereof was filed with the county recorder and designated No. 156. The land has since been known as The Hollywood Cemetery. It is bounded on the north by Santa Monica Boulevard, on the east by Van Ness Avenue, and on the west by Gower Street. It is approximately 1920 feet long east and west, and approximately 1280 feet wide north and south. A re-subdivision of part of the property was made in May, 1914, and another map (No. 317) was filed. In 1921 a later map (No. 523-R) was filed, which had annexed thereto rules, regulations and restrictions affecting the use of the lots by purchasers.

In March, 1925, a zoning ordinance of the city of Los Angeles prohibited the burial of bodies in a strip of land along the whole of the northern boundary of the cemetery, consisting of the northerly 102.61 feet. No bodies were, as yet, there interred. Thereafter plaintiff constructed a wall separating this strip from the rest of the cemetery and petitioned for a change in the ordinance so as to permit that portion to be used for business purposes. Objection was made by certain owners of lots in the cemetery, and the matter was still pending at the time this action was commenced. In plaintiff's latest map this strip is shown as divided into nineteen lots.

On January 25, 1923, and prior to the passage of the above-mentioned zoning ordinance, the city council of Los Angeles passed an ordinance of intention to improve a portion of Van Ness Avenue, under the Vrooman Act (Deering's General Laws 1923, Act 8194). The said ordinance was approved by the mayor, and thereafter the proper publication and posting of notices took place as required by the statute. The district to be charged was described in the notices and in a map filed with the city engineer, and included a parcel of land which was formerly fractional lot 15 of I. A. Weid's subdivision, and which now consisted of the easterly 300 feet of the Hollywood cemetery. This easterly 300 feet included a portion of the above mentioned strip of land running along the northerly boundary, namely, lots 17, 18 and 19 thereof.

No written objections to the proposed improvement were made, and no objection was made to the extent of the proposed district. Thereafter the board of public works made the assessment on the said lands, and the property of plaintiff (the easterly 300 feet of the tract) was assessed as one parcel in the sum of $11,069.90. The assessment was recorded on December 24, 1924, in the office of the board of public works. Plaintiff did not file any appeal to the city council. In this connection the court found that "plaintiff had no actual notice or knowledge of said assessment, excepting the constructive notice arising from the publications heretofore mentioned, until after the time for filing an appeal regarding the said assessment had expired."

In the land assessed, i. e., the easterly 300 feet, there had been sold, prior to the assessment, a large number of

lots and graves, and about 2,700 bodies had been buried therein. Plaintiff still has unsold, however, a portion of the property, including the said lots 17, 18 and 19 in the northerly strip, and comprising a total of not over thirty-six per cent of the land assessed.

The assessment was not paid, and a bond was issued on February 7, 1924, as provided in the act of 1893 (Deering's General Laws 1923, Act 8208). This bond, in the sum of $11,069.90, was purchased by defendant The Elliott-Horne Co. Plaintiff did not at any time present to the city treasurer an affidavit that it was the owner of the land or any part thereof and desired no bond to be issued. (See Deering's General Laws 1923, Act 8208, sec. 4.) Payment of $2,213.98 on principal and interest was made up to July 2, 1926, and no other sums were paid. On September 21, 1927, plaintiff tendered to defendant corporation thirty-six per cent of the amount remaining unpaid on the bond, which was refused. On September 26, 1927, defendant corporation gave notice to defendant city treasurer to sell the premises described in the bond at public auction. The latter gave due notice and set October 9, 1927, as the date for sale, but prior thereto plaintiff obtained a restraining order preventing such sale.

At the trial the cause was submitted upon written stipulation of facts and the several exhibits attached to the pleadings. The court gave judgment for defendants and dissolved the restraining order.

The chief contention of plaintiff on this appeal is that the assessment was improper because the portion of its property already transferred to others for burial purposes was exempt from such assessment. Before dealing with this proposition, however, we may briefly dispose of certain minor points raised in the briefs.

■ With respect to the filing of the various maps of the tract, the court found that the plaintiff "did not . . . reserve any parcel of ground whatsoever for public purposes, and did not set forth lots intended for sale as are lots in recorded maps of cities, towns, additions to cities or towns, or subdivisions of land into small lots and tracts for the purpose of sale." Plaintiff contends that this finding is contrary to the evidence, and points to map No. 523–R, which shows a fifteen-foot alley separating the northerly

strip of land from the rest of the cemetery. The trial court also found that "the entire cemetery property of the plaintiff constitutes a unit maintained by the plaintiff for cemetery purposes." Plaintiff claims that lots 17, 18 and 19, which comprise the portion of the northerly strip lying within the assessed area, are business lots, separated by the above-mentioned alley from the rest of the cemetery. It is therefore argued that these lots should have been assessed separately from the rest of the cemetery property.

The parties stipulated, and the court found, that none of the maps filed by plaintiff were executed or recorded as required by the statute governing the subdivision of land into lots for the purpose of sale. (Deering's General Laws 1923, Act 4574.) Plaintiff suggests that cemetery corporations are not governed by the provisions of this statute, but come within the terms of California Civil Code, section 608, which merely requires that. a map of the cemetery be filed in the office of the county recorder. This section can have no application here, for plaintiff is attempting to establish an alleged separation of the northerly strip of land from the rest of the cemetery, and the subdivision thereof into business lots for purposes of sale. As to these lots and the alleged public alley, the Map Act should control, and it clearly appears in the stipulated facts and the findings of the court that there was no compliance with its terms. Plaintiff further claims that such lack of compliance with respect to the maps filed in 1901 (No. 156) and in 1914 (No. 317) was immaterial in view of the provisions of the Curative Act of 1921 (Deering's General Laws 1923, Act 4575). But the record does not establish that these two earlier maps showed such separation and dedication as, it is contended, is shown in the latest map filed in 1921, but after the Curative Act. Finally it must be remembered that the northerly strip was improved with lawns and shrubbery, and no physical separation from the rest of the cemetery was made until the wall was constructed in 1925, after the levying of the assessment. We think that the findings of the court to the effect that the cemetery property is a unit, no part of which is reserved for public purposes, are sufficiently sustained by the evidence.

Another contention of plaintiff is that under section 7, subdivision 10, of the Vrooman Act, the property should

not have been assessed as a unit, but that assessments should have been levied against the separate lots, sections and parcels, as shown on Map No. 523–R. On this point, it must again be observed that plaintiff did not comply with the requirements of the Map Act in filing its Map No. 523–R for record. ▮ It has been held that the mere fact that a piece of land has been surveyed and mapped and subdivided by its owner does not warrant the placing of assessments on the separate parcels indicated thereon, where the map has not been properly recorded. (*People* v. *Clifford*, 166 Ill. 165 [46 N. E. 770].) ▮ A more conclusive answer to this contention is, however, that the holders of the various lots are not owners in fee. The deeds executed to purchasers contain the following provision: "To Have and to Hold unto the said grantee and to his heirs and assigns, for the purpose of Sepulture only, and subject to the rules, regulations and By-Laws of said association, now existing, or which may be by it hereafter passed and adopted." The Rules and Regulations provide among other things that all grading, landscape work and improvements of any kind shall be done only by the association; that subdivision of lots is not allowed; that no one but the grantee or a relative may ordinarily be buried therein; that interments are to be made under the supervision of the association; that lot owners are admitted only by tickets which they must secure from the association; that graves, monuments and other structures must be made in accordance with plans approved by the association. It has been very generally held that the conveyance of a cemetery lot does not vest the purchaser with title, but merely with the right of burial, which is sometimes considered an easement, and sometimes a mere license. (*Kincaid's Appeal*, 66 Pa. St. 411 [5 Am. Rep. 377]; *Anderson* v. *Acheson*, 132 Iowa, 744 [9 L. R. A. (N. S.) 217, 110 N. W. 335]; *Brown* v. *Hill*, 284 Ill. 286 [119 N. E. 977]; 5 R. C. L. 244, 245; 11 C. J. 60; note to *Petition of Waldron*, (R. I.) 67 L. R. A. 118.) Particularly must this be so where there are such conditions and restrictions as we find in these deeds.

Plaintiff calls attention to section 613 of the Civil Code, which provides in part: "Whenever an interment is made in any lot or plat transferred to individual owners by the corporation, the same thereby becomes forever inalienable,

and descends in regular line of succession to the heirs at law of the owner.'' In *Hornblower* v. *Masonic Cemetery Assn.,* 191 Cal. 83 [214 Pac. 978, 980], this court had before it practically the same language in the statute providing for the incorporation of rural cemetery corporations (Deering's General Laws 1923, Act 1284, sec. 11), and nevertheless approved the general rule that ''such a conveyance does not pass any title or estate, but merely an interest, and that the fee remains in the grantor, subject to the right of the grantee to the exclusive use thereof for burial purposes.''

Other cases point to the impracticability of making a separate assessment on each of a large number of cemetery lots. Thus, in *Mullins* v. *Mt. St. Mary's Cemetery,* 259 Mo. 142 [168 S. W. 685, 687], the court says: '' . . . if the separate cemetery lots were made the units for special tax purposes, the result would be unsatisfactory to all concerned. Some lots would be sold for the tax, and thus diverted to secular uses. . . . The cemetery, instead of being one consecrated place of burial, or all devoted to business or residence purposes, would be broken up into small fragments used for different and incompatible purposes, rendering the cemetery unfit for the repose of the dead or the activities of the living.'' The case went to the United States Supreme Court, and it was there said (*Mt. St. Mary's Cemetery Assn.* v. *Mullins,* 248 U. S. 501 [63 L. Ed. 383, 39 Sup. Ct. Rep. 173, 174, see, also, Rose's U. S. Notes Supp.]) : ''The plaintiff in error contends that it was deprived of its property without due process of law, inasmuch as about one-half of the tract of 34 acres belonging to the Cemetery Association had, before the assessment, been conveyed for burial lots; that the assessment against the entire tract had the effect to impose the lien upon much of its property arbitrarily, as the burial lots had been conveyed to others. But the Supreme Court of Missouri held that the fee in the title to the burial lots which had been sold or leased was still in the association, with an easement of the right of burial in the lot purchasers. We see no deprivation of due process of law in this holding making the ownership of the association the subject of assessment. The right of burial, which was all that the lot purchasers or lessees acquired, for obvious reasons could not be put upon the market and sold to pay assessments. The association

had a title which the court held might be and was the subject of assessments." (See, also, *Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 503.)

■ Finally, it is provided in section 11 of the Vrooman Act that a party aggrieved by an act or determination in relation to the assessment shall appeal to the city council within thirty days after the date of the warrant. An objection of this character, namely, that land has been assessed as a unit instead of as a number of separate parcels, must be made by appeal to the city council, in order that such body may have the opportunity to correct its error. (*McSherry* v. *Wood*, 102 Cal. 647 [36 Pac. 1010]; *Buckman* v. *Landers*, 111 Cal. 347 [43 Pac. 1125]; see, also, *Ahlman* v. *Barber Asphalt Paving Co.*, 40 Cal. App. 395 [181 Pac. 238].) Plaintiff had constructive notice of the assessment, but never appealed to the city council and, as a matter of fact, never made any objection to its character until some time after the bonds were issued. In view of the above provision of the Vrooman Act, it is unnecessary to consider the effect of the curative provision of the street bond improvement statute. (Deering's General Laws 1923, Act 8208, sec. 4; see *Chase* v. *Trout*, 146 Cal. 350 [80 Pac. 81].)

It therefore appears that the objections to the manner of levying the assessment are not well founded; and were, moreover, not properly nor seasonably raised. ■ We now come to a consideration of the basic question presented by this appeal: Whether the property involved is exempt from an assessment of this character. In this connection it should be borne in mind that we are dealing with a local street assessment, and not a general tax; with a private corporation organized for profit; with property not all of which has been sold for burial purposes or occupied by human bodies; and with property, the legal title to which is in the corporation.

Plaintiff points to several statutes which, it is claimed, create the exemption. The first reference is to the act providing for the formation of rural cemetery corporations, which, as amended in 1911, exempts from taxes and assessments "cemetery lands and property of any association, formed pursuant to this act. . . . " (Deering's General Laws 1923, Act 1284, sec. 10.) Plaintiff can derive no benefit from this provision, since it was organized for profit,

and not under this act. Article XIII, section 1b, of the California Constitution, adopted in 1926, provides that property "used or held exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead, except as used or held for profit, shall be free from taxation and local assessment." This section was not passed until after the assessment was levied. Plaintiff states that the amendment merely declares the previously existing law, but no authority is cited in support of this unusual assertion, and plainly the presumption would be to the contrary. (See *McCarthy* ·v. *Board of Fire Commrs.*, 37 Cal. App. 495 [174 Pac. 402]; *Thomas* v. *Joplin*, 14 Cal. ·App. 662 [112 Pac. 729]; 23 Cal. Jur. 778.) To take plaintiff's view would also be to render meaningless the express statutory exemption made for corporations formed under the act providing for rural cemeteries.

Plaintiff's final reference is to the statute making cemetery lots inalienable (Cal. Civ. Code, sec. 613); and to the statutes prohibiting the desecration of graves. (Cal. Pen. Code, secs. 290, 296.) It is argued that since lots and graves in which interments have been made cannot be sold by anyone or used for any purpose save burial, and that since the only procedure for collection of an assessment is by sale of the property assessed, the property of the cemetery sold for burial purposes is exempt. There are several decisions which, to some extent, tend to support this argument. In *Woodmere Cemetery Assn.* v. *City of Detroit*, 192 Mich. 553 [159 N. W. 383], ·the court declared that the liability for· the assessment could not be separated from the procedure of enforcement; and a statute preventing the interference with cemetery property, and the corporate charter preventing its sale for any other purposes than burial, were construed to indicate a legislative intention to create an exemption from the assessment. (See,· however, the dissenting opinion, in which four justices joined.) In *Cave Hill Cemetery Co.* v. *Gosnell*, 156 Ky. 599 [161 S. W. 980], the court arrived at the same conclusion; and language. of similar import may be found in *City of Gary* v. *Gary Oakhill Cemetery Assn.*, 186 . Ind. 446 [116 N. E. 741, 742]. All of these cases are, however, distinguishable. In the Cave Hill Cemetery Co. case, the corporation was not organized

for private profit; and it also appears that there was no property available for enforcement of the assessment which was not either filled with graves, or with shrubbery, walks, etc., which the court held were equally under the protection of the particular statute. In the Woodmere Cemetery Association case, the whole of the property was, by the charter of the association, irrevocably dedicated to burial purposes; and the court, construing the charter and the statute under which the corporation was formed, concluded that the situation was the same as if all of the lots had been sold and filled with graves. The only point really decided by these cases is that where the sole means of enforcing the assessment is by sale of property filled with graves or irrevocably dedicated to burial purposes, and the statutes prohibit such sale, it follows by necessary implication that the legislature intended the cemetery to be exempt from the assessment. In the Gary case the statute provided that lots held, used or occupied for cemetery purposes "shall not be assessed for the construction of such sewer or drain, but so much of the cost of such sewer or drain as would be assessable against such lots or parcels of land, if not so held, shall be assessed against such city and shall be paid by it." Notwithstanding this express exemption, the court said: "In the absence of a statute exempting lands held as here shown to be held by appellee, there is no sound reason why they may not be liable to contribute to local improvements." It was pointed out that the association still owned land which, though divided into burial lots, was not yet in actual use; and the opinion then continues: "For, if payment of the assessment should be enforced by sale of the land, the lots in use, or held for family burial, as well as any and all improvements made on the land, are as fully protected against the acts and doings of a purchaser as they are now. If it were shown that such assessment could not be satisfied without desecrating the graves and subjecting the purchaser to punishment under a penal statute of the state (sec. 2309, Burns, 1914), the assessment should not be sustained. The facts here show that a reasonable assessment may be enforced against the land of appellee, without molesting the lots or parcels of ground actually in use for burial purposes."

Under their particular facts, these decisions may be perfectly sound, and it is sufficient for our present purposes to observe that they deal with situations essentially different from that which confronts us here. Plaintiff seeks to escape from the assessment on the ground that it cannot be enforced against the holders of the lots. A simple answer would be that this is an objection which might be raised by them were such an attempt made; and they could undoubtedly prevent a sale, or restrain the use of the property in any other manner than for burial purposes. (*City of Harrisburg* v. *Harrisburg Cemetery Assn.*, 293 Pa. St. 390 [143 Atl. 111].) This would be but one example of the right of the holder of the lot to prevent interference with the purposes for which it was acquired, namely, the burial of the dead. Such a right exists in spite of the fact that he does not hold title to the property. (*Hertle* v. *Riddell*, 127 Ky. 623 [128 Am. St. Rep. 364, 15 L. R. A. (N. S.) 796, 106 S. W. 282]; *Brown* v. *Hill*, 284 Ill. 286 [119 N. E. 977].) But we do not see how this circumstance shows a legislative intention to exempt the corporation itself from the assessment. Once levied, it could be enforced against such property as was not, by statute, rendered immune from sale: i. e., such lots as were as yet not devoted to purposes of sepulture. (*Lima* v. *Cemetery Assn.*, 42 Ohio St. 128 [51 Am. Rep. 809]; *City of Gary* v. *Gary Oakhill Cemetery Assn., supra.*) Plaintiff asserts that the effect of this would be to concentrate the assessment intended for the whole tract upon a portion thereof; in this case, thirty-six per cent of the total area of the cemetery. We do not so view the situation. We think that the effect would rather be to force the corporation to meet a valid assessment by the sale of any of its property which could lawfully be sold.

The case of *In re Sixth Avenue West*, 59 Wash. 41 [Ann. Cas. 1912A, 1047, 109 Pac. 1052, 1054], appears to be in some conflict with these conclusions, and requires a brief discussion. The court there decided that a private corporation, organized for profit, was not made exempt from assessments by any of the statutes considered, as to its unsold lands. But the court then said: "Learned counsel for the city contend that the deeds from the cemetery company to the several grantees do not convey the fee; hence, the land is still under one ownership, is therefore a single tract

and assessable as such. . . . We think, however, the solving of the question of whether or not these burial lots are exempt from assessment will determine the question as to the cemetery company's right to have its remaining land charged separately. . . . It would clearly be erroneous and prejudicial to the rights of an owner to have his land assessed with other lands by charging the assessment against all as one tract, when the other lands are exempt from such assessment, upon the theory that the whole is assessable, even though such owner might have some interest in the exempt lands." The opinion then went on to construe a statute providing that a burial place, when appropriated by the holder for such purposes, could not be taken by any warrant or execution "for any tax or debt whatever," and held that it constituted an express exemption of the property: "It will be noticed that the exemption language of that section is very broad and comprehensive. It is that such family burial grounds 'shall not be liable to be taken or disposed of by any warrant or execution for any tax or debt whatever.' This language, it seems to us, is sufficiently comprehensive to include special assessments. Many authorities have been cited touching exemptions under statutes of similar import, though none using this exact language. And while we recognize the general rule that a mere exemption from 'taxation' does not exempt from local assessments, each case must largely depend upon the language of the statute giving the exemption. In view of the language of 3640, we are of the opinion that the lots conveyed by the cemetery company by deeds in the form above quoted thereby became exempt from special assessment as well as from general taxation." It is apparent from the foregoing quotation that the court construed the statute as making an express exemption from taxation in the case of lots already appropriated for burial purposes; and upon that ground, the decision is unquestionably sound. Obviously, exempt property should not be included with property not exempt, in a single assessment. But California has no such statute. The sections of the Civil and the Penal Code, already mentioned, prevent the sale of lots and the desecration of graves, but say nothing of taxes; and no express or implied exemption can possibly be deduced therefrom.

It may be well at this time to summarize, briefly, the conclusions set forth in the foregoing discussion. As we understand the case of plaintiff, no serious claim is made that there is any actual exemption of its property by express statutory provision. It has, in fact, offered to, pay a portion of the assessment, recognizing that there is no reason why it should ordinarily be relieved of obligations borne by other property holders. But plaintiff contends that though it may not itself be entitled to exemption, the holders of lots in the tract, which lots are devoted to burial purposes, are so entitled by virtue of the fact that the law does not permit the only method of enforcement—sale of the lots. Plaintiff recognizes further that this so-called exemption protects only the land already disposed of for burial purposes and leaves open to sale those lots unsold and retained by it. Plaintiff therefore argues that the land retained should not be burdened with the assessment of the land exempted, but should only be liable for a part of the total charge, in proportion to its area. Thus plaintiff transforms a protection of the lot holders into an exemption for itself.

We accept neither of these propositions, which seem to us to be wholly artificial, and without substantial support in the authorities. We are of the opinion that an exemption from local assessments cannot be implied from a mere immunity from the procedure of enforcement, which immunity is not even declared in the taxing statute. We conclude that the land held for burial purposes is not exempt from the assessment, but the right of sepulture cannot be sold to pay it. The corporation, however, is the holder of the legal title to the entire tract, against which the assessment is made. The obligation rests upon it, and all property in the tract, which it has and which can be sold, may properly be sold to meet that obligation.

Thus far we have considered only the question whether exemption may be derived from the provisions of the law preventing the sale of burial lots and interference with graves; and we have disposed of the argument that there is a statutory basis for the claim of exemption. ■ There remains to be considered the final question, whether private cemetery corporations should, as a matter of public policy, be exempt from local assessment.

This phase of the inquiry is, we think, less difficult. It is perhaps to be doubted whether such a contention should even be considered, under the circumstances. The statute providing for rural cemetery corporations has specifically granted exemption to that single type of cemetery corporation. Exemption from local assessment should, even more than exemption from general taxation, be based on express statutory authority, for every such exemption increases the burdens of other property owners, and decreases the rights of the contractor who performs the work; and an exemption from general taxation will ordinarily not include exemption from local assessments. (*Los Angeles Ry. Corp.* v. *Los Angeles County Flood Control Dist.*, 78 Cal. App. 173 [248 Pac. 532]; *Southern Pac. Ry. Co.* v. *Stibbens*, 103 Cal. App. 664 [285 Pac. 374]; *San Diego* v. *Linda Vista Irr. Dist.*, 108 Cal. 189 [35 L. R. A. 33, 41 Pac. 291, 293]; *Lima* v. *Cemetery Assn.*, 42 Ohio St. 128 [51 Am. Rep. 809]; *Greenwood Cemetery of Wayne* v. *City of Wayne*, 110 Neb. 300 [193 N. W. 734]; *State* v. *Crystal Lake Cemetery Assn.*, 155 Minn. 187 [193 N. W. 170]; *City of Harrisburg* v. *Harrisburg Cemetery Assn.*, 293 Pa. St. 390 [143 Atl. 111].) We deem it unnecessary to consider those cases which hold that public property, or property devoted to public use, is by implication exempt from assessment, and only taxable where there is express statutory authority therefor. (See *City of Inglewood* v. *County of Los Angeles*, 207 Cal. 697 [280 Pac. 360].) ■ A private cemetery is in no sense public property, or property devoted to public use. (*Matter of Deansville Cemetery Assn.*, 66 N. Y. 569 [23 Am. Rep. 86]; *Evergreen Cemetery Assn.* v. *Beecher*, 53 Conn. 551 [5 Atl. 353].) ■ It has been declared in this state that "implied exemptions should not be extended to property which is not held or used for municipal or governmental purposes." (*San Diego* v. *Linda Vista Irr. Dist., supra.*)

The briefs of plaintiff have cited to us a number of cases. Some are from jurisdictions where an express statutory exemption exists. (See *State of Minnesota* v. *City of St. Paul*, 36 Minn. 529 [32 N. W. 781]; *Olive Cemetery* v. *City of Philadelphia*, 93 Pa. 129 [39 Am. Rep. 732].) Others deal with public cemeteries, not operated for profit. Of these, the one most relied upon is *Mt. Auburn Cemetery* v. *Board of Aldermen*, 150 Mass. 12 [4 L. R. A. 836, 22

N. E. 66, 68], where the court said that the question was whether "when the Legislature had appropriated certain land for a burying ground and forbidden that it would ever be sold or used for any other purpose, and had forbidden that moneys received from it should be devoted to any purpose except its preservation and improvement as a burying ground, they intended that it should be taxed for the right to use as a sewer. . . . " Still other cases have held that where the entire property had been converted into burial lots or filled with graves, there was no longer any land which could be sold to pay the assessment, and consequently it could not be enforced. (See *Louisville* v. *Nevin*, 10 Bush (Ky.), 549 [19 Am. Rep. 78]; and note, 35 L. R. A. 36.)

None of these decisions are controlling in the present case, which is concerned with a private corporation, organized for profit, and having in its possession some property not devoted to burial purposes. The great majority of the cases have held that such a corporation is not exempt from local assessment, in the absence of an express statute.

In *Garden Cemetery Corp.* v. *Baker*, 218 Mass. 339 [Ann. Cas. 1916B, 75, 105 N. E. 1070, 1071], the court considered and distinguished the earlier Massachusetts case of *Mt. Auburn Cemetery* v. *Board of Aldermen, supra*, on the ground that there "the land by legislative act was dedicated. perpetually to the uses of a burial ground, its conveyance or use for any other purpose forbidden and its income from sales of lots required to be devoted to its improvement, and all private profit prohibited." The court then says: "The conclusion that a cemetery may be liable to a special assessment of this general nature is supported by the great weight of authority. (*Lima* v. *Cemetery Assn.*, 42 Ohio St. 128 [51 Am. Rep. 809]; *Buffalo City Cemetery* v. *Buffalo*, 46 N. Y. 506; *Gouverneur Village* v. *Gouverneur Cemetery Assn.*, 136 App. Div. 37 [120 N. Y. Supp. 221]; *Mullins* v. *Mount Saint Mary's Cemetery Assn.*, 239 Mo. 681 [144 S. W. 109]; *Philadelphia* v. *Union Burial Ground Soc.*, 178 Pa. 533 [36 L. R. A. 263, 36 Atl. 172]; *Baltimore* v. *Green Mount Cemetery*, 7 Md. 517; *Bloomington Cemetery Assn.* v. *People*, 139 Ill. 16 [28 N. E. 1076]; *Seattle* v. *Mt. Pleasant Cemetery Co.*, 59 Wash. 41 [Ann. Cas. 1912A, 1047, 109 Pac. 1052]. See cases collected in Ann. Cas. 1912A, 1047

et seq. See *Meriden* v. *W. Meriden Cemetery Assn.,* 83 Conn. 204 [76 Atl. 515].) There are contrary authorities, resting generally, however, upon the interpretation of exemption statutes and not upon abstract principles. (*Cave Hill Cemetery Co.* v. *Gosnell,* 156 Ky. 599 [161 S. W. 980]; *Swan Point Cemetery* v. *Tripp,* 14 R. I. 199; *In re New York,* 192 N. Y. 459 [85 N. E. 755].)''

In *State* v. *Crystal Lake Cemetery Assn.,* 155 Minn. 187 [193 N. W. 170, 172], the court said: ''No good reason suggests itself for supposing that the Legislature intended corporations formed for pecuniary gain to operate cemeteries free from the burdens of special assessments. Such exemption is in the nature of a bounty, going to increase the dividends of the shareholders. Where property is devoted exclusively to public, charitable, educational or religious uses, there is a valid reason for exemption, in that the entire income and benefit derived therefrom inures solely to the welfare of the state and its citizens generally, and not for private gain. It may be doubtful whether the Legislature has the power to exempt from special assessment property held by a corporation organized for pecuniary profit, even though the public may be granted some use thereof.''

See, also, *Lima* v. *Cemetery Assn.,* 42 Ohio St. 128 [51 Am. Rep. 809]. Many other decisions are collected in 25 R. C. L. 122; Ann. Cas. 1912A, 1047; L. R. A. 1918A, 157.

We see no reason to disregard this general current of authority, for it appears to us to be founded on correct principles and sound policy. The people have seen fit to make an express exemption by constitutional amendment, in 1926. They had not seen fit to do so before that time, but were satisfied to have the exemption apply solely to corporations formed under the act providing for rural cemeteries, and not operating for profit. The lack of an express statutory exemption at the time this assessment was made is fatal to the claim of plaintiff, which claim rests purely on technical grounds. Its attack on the assessment is not that it is unjust or unreasonable, but that it is unenforceable; and not that it is unenforceable against plaintiff, but that it is unenforceable against the lot owners. No compelling principle of justice or policy is presented, sufficient to war-

138

rant a determination contrary to the weight of authority, and in conflict with our own taxing statutes.

The judgment is affirmed.

Richards, J., Curtis, J., Seawell, J., Preston, J., and Waste, C. J., concurred.