### AVERY *v.* FOREST LAWN CEMETERY CO.

EXEMPTIONS—CEMETERIES—ENFORCEMENT OF JUDGMENT—POWER OF CHANCERY COURT.

> Under 3 Comp. Laws, § 10322, providing that all cemeteries, tombs, and rights of burial, while in use as repositories of the dead, shall be exempt from levy and sale on execution or any other final process of a court; and the proviso to section 437, 1 Comp. Laws, that the power of the chancery court to decree the satisfaction of judgments on creditors' bills shall not extend to "property exempt from execution," — a court of chancery has no power to enforce a judgment by directing the sale of property used as a cemetery, though the owner be a private corporation organized for financial profit.

Appeal from Wayne; Hosmer, J. Submitted February 14, 1901. Decided June 17, 1901.

Bill by John H. Avery and others, executors of the last will and testament of Darius N. Avery, deceased, against the Forest Lawn Cemetery Company, to enforce a judgment against defendant by the sale of its lands. The Detroit Savings Bank was permitted to intervene as a defendant. From a decree dismissing the bill, complainants appeal. Affirmed.

*Gray & Gray*, for complainants.

*Sidney T. Miller* and *James Cosslett Smith*, for defendant bank.

LONG, J. The bill is filed in this case by the executors of the last will of Darius N. Avery against the Forest Lawn Cemetery Company to obtain a decree against said company authorizing the sale of certain real estate held by the company for cemetery purposes, to pay a judgment obtained by complainants' testate in the Wayne circuit court on December 31, 1898, for $18,519.55 and costs taxed at $22.

The defendant company was organized in 1889 under Act No. 12, Laws 1869, entitled "An act to authorize and encourage the formation of corporations to establish rural cemeteries, and provide for the care and maintenance thereof." After its formation the company purchased certain real estate for burial purposes. It first purchased 80 acres in December, 1889, and shortly thereafter purchased on executory contract a 20-acre tract adjoining. In 1893, under the authority of the act for the formation of such companies, it prepared a plan for laying out said two parcels of land as a cemetery, with burial lots, ornamental grounds, roads, and pathways, and recorded said plan in the office of the company, and has from time to time since granted to various persons rights of burial in certain parts of the cemetery, it being intended that the whole should remain as a cemetery under the plan aforesaid. In June, 1898, the company purchased an additional 10 acres for the purpose of dividing the same into burial lots. This last 10 acres was purchased under an executory land contract, and the company, being indebted on the contract for the 20 acres, as well as for the 10 acres, was unable to pay for the said 10 acres. That contract was afterwards declared forfeited, and reverted to the vendor in the contract. The defendant company paid about $25,000 for the land now held, and has expended thereon about $85,000. It has no assets except these lands. It appears that at one time, in order to raise funds, it issued interest-bearing stock. It became further embarrassed, and borrowed money from time to time of Darius N. Avery. He held 264 shares of preferred and

618 shares of common stock. The Detroit Savings Bank, one of the defendants, owned 116 shares of stock, of the par value of $11,600. After the bill in this cause was filed, the Detroit Savings Bank was permitted to intervene as a defendant.

It is alleged in the bill that the corporation has not sufficient funds with which to continue the maintenance of said cemetery; that it has no claim against any of the stockholders, because said stock in their hands is fully paid;

"That your orators have proposed to the other stockholders that all shall unite in paying in a sufficient sum to insure the maintenance of said cemetery; that about three-fourths of the stockholders in value are prepared to pay such assessment as may be necessary for this purpose, but that the remaining stockholders are unwilling to make any advances, and the majority are unwilling, therefore, to make any payments which shall inure to the benefit of the minority unless the latter contribute their proportion."

The prayer of the bill is that, in order to preserve the present burial rights in the cemetery, the lands may be sold, with such provision as the court may deem proper for the preservation of burial rights; that the proceeds of the sale be applied to the payment of the judgment; and that the cancellation of the contract for the purchase of the 10 acres be confirmed.

The defendant Detroit Savings Bank filed an answer to the bill, alleging that the lands first described in the bill are exempt from sale under any decree or order of the court, and prayed the same advantage of the answer as if it had pleaded or demurred to the bill. The bill was taken as confessed by the cemetery company, and heard on pleadings and proofs taken in open court as to the Detroit Savings Bank. The court found by the decree that the defendant company had the lands described, but that they had been laid out as a cemetery, with burial lots, ornamental grounds, roads, and pathways, and that it had no other property; "that the sale of said lands or any part thereof, under the decree of this court, for the

purpose of satisfying the claim of the complainants, is forbidden by law, and this court therefore denies a sale thereof, either directly or through a receiver or other officer of this court." No costs were granted. The complainants appeal.

It appears that there had been about 1,700 burials in the cemetery at the time of the hearing in the court below. The statute in reference to such cemeteries provides by section 8406, 3 Comp. Laws, that:

"All the lands of said corporation inclosed and set apart for cemetery purposes, and all rights of burial therein, shall be wholly exempt from taxation of any kind whatsoever."

Section 8407 provides:

"No mortgage or other lien or incumbrance shall be executed upon any of the lands of such corporation actually used for burial purposes, and no rights of burial upon any mortgaged lands of such corporation shall at any time be granted or sold by it."

And by section 10322 it is further provided:

"The following property shall be exempt from levy and sale under any execution, or upon any other final process of a court: * * * *Third.* All cemeteries, tombs, and rights of burial, while in use as repositories of the dead."

It appears that an execution was issued on the judgment obtained by complainants, and returned unsatisfied. They now seek by the aid of the court of equity to acquire rights in the lands which they could not have or obtain in an action at law, and in lands which, by the statute, are exempt from levy and sale on execution or any other final process of a court.

The general powers, duties, and jurisdiction of circuit courts in chancery are defined in section 437, 1 Comp. Laws, as follows:

"The court shall have power to compel such discovery, and to prevent such transfer, payment, or delivery, and to decree satisfaction of the amount remaining due on such judgment out of any property, money, or other

things in action belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by proceedings in chancery, whether the same were originally liable to be taken in execution at law or not:   *Provided,* this act shall not apply to property exempt from execution."

Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.   In *Skinner* v. *Shannon,* 44 Mich. 86 (6 N. W. 108, 38 Am. Rep. 232), which involved the statutory exemptions of the members of a partnership, it was said:

"If the property is exempt under the statute, parties dealing with them must take notice of that fact; and it is no hardship whatever to enforce the right when the occasion arises which demands it."

In *Wolford* v. *Cemetery Ass'n,* 54 Minn. 440 (56 N. W. 56), foreclosure was attempted of a mortgage on cemetery lands.   The statute forbade conveyance except for burial purposes.   It was the contention of the complainant that, though the land was impressed by law with a perpetual use for cemetery purposes, his mortgage would be operative to the extent of the defendant's interest in the premises; its grantee would take the land subject to the same use; and complainant would succeed to the proprietorship of the land, holding it, as defendant held it, for the purpose of and subject to use for burial. This right was denied to the complainant, and it was held that the mortgage was void, and its foreclosure unavailing.

It is the settled policy of this State, in common with the universal sentiment of mankind, to preserve and maintain the burial places of the dead.   The legislature has, by express enactment, prohibited the sale, except for burial purposes, or mortgaging, of lands set apart for cemetery purposes.   It has also in express terms provided for the exemption from levy and sale on execution, or upon any other final process of a court, of all cemeteries, etc., while in use as repositories of the dead.   This was within

the power of the legislature to do, and so careful has the legislature been to preserve such properties for burial purposes that it has also in express terms taken it out of the power of the court of chancery to decree satisfaction of any judgment out of such exempt property.

The decree of the court below must be affirmed, with costs of this court to defendant Detroit Savings Bank.

The other Justices concurred.