WOODMERE CEMETERY ASSOCIATION *v.* CITY OF DETROIT.

1. TAXATION—EXEMPTION—STATUTES—SPECIAL ASSESSMENT—PAVING TAX.

The real property of a cemetery association incorporated under the statutes of this State is exempt from general taxes by virtue of 1 Comp. Laws, § 3830, 1 Comp. Laws 1915, § 4001, and under the general policy of our law is exempt from a special paving assessment which, also by charter provisions of the association, may not lawfully

be levied upon its real property holdings. (3 Comp. Laws, § 8399, 3 Comp. Laws 1915, § 11160.)

2. SAME—EQUITY—CROSS-BILL—AFFIRMATIVE RELIEF.

In a suit to set aside the paving tax, and sale of the premises by virtue of it, the defendant city of Detroit had no lien on the property as a result of the paving assessment and sale of the property to satisfy the tax, and was not entitled to relief on its cross-bill.

3. SAME—SEQUESTRATION—SPECIAL ASSESSMENT—EQUITY.

Nor could the court, in view of the revenue to be derived from the continued sale of the burial sites and possible enhancement of values by reason of the pavement, sequestrate the funds received from this source and apply the same to payment of the tax. KUHN, BIRD, STEERE. and BROOKE, JJ., dissenting.

Appeal from Wayne; McDonald, J., presiding. Submitted January 7, 1916. (Docket No. 63.) Decided September 26, 1916.

Bill by the Woodmere Cemetery Association against the city of Detroit to set aside certain pavement assessments and to cancel the sale of complainant's property for said special assessments. From a decree for complainant, defendant appeals. Affirmed by a divided court.

*James O. Murfin* (*Rufus G. Lathrop*, of counsel), for complainant.

*Walter Barlow* (*Harry J. Dingeman*, of counsel), for defendant.

Complainant in the year 1869 was organized and is now doing business under the provisions of Act No. 12, Laws of 1869, which is entitled

"An act to authorize and encourage the formation of corporations to establish rural cemeteries, and provide for the care and maintenance thereof." 3 Comp. Laws, § 8399 *et seq.* (3 Comp. Laws 1915, § 11160 *et seq.*).

It owned and has platted for the purposes of its organization land now within the boundaries of the city of Detroit, but formerly within the limits of Springwells township, Wayne county, the southeastern corner of which is at the intersection of Fort street (on the south) with Woodmere avenue (on the east). The northeastern corner is the intersection of Woodmere and Ferndale avenues. Its western boundary is a creek, which has an irregular course, generally from north to south, and a part of its southern boundary is Dearborn avenue, which Fort street intersects. It seems to be more than 4,500 feet from Fort street to Ferndale avenue, and the property, a single parcel, may be said to front upon Fort street and upon Dearborn, Woodmere, and Ferndale avenues, the frontage on Fort street being 1,561 feet and on Dearborn avenue 1,796.13 feet. The city of Detroit paved Fort street between Woodmere and Dearborn avenues, proceedings in this behalf being begun in February, 1910, and $7,503.48 of the cost thereof was assessed upon complainant's entire property, upon the basis of the frontage on Fort street. It was assessed in four parts of $1,875.87 each, becoming due and payable January 25, in the years 1911, 1912, 1913, and 1914. Complainant did not pay the tax, nor any of it, and the city proceeded to sell the said land, bidding it in, for want of other bidders, at sales held in March of each of the years 1912, 1913, 1914, and 1915, for the period of 99 years. According to the governing law, one year was afforded to redeem from each sale. There has been no redemption. In the land so assessed and sold for said paving tax, there had been buried, on and before April 30, 1915, 54,447 bodies, in graves and burial lots lying in all portions of the grounds. Complainant issues certificates to persons desiring to use the grounds for burial purposes, by the terms of which a

grant is made of the perpetual and exclusive use of the lot or place described therein for the sole purpose of burial, the complainant undertaking that the cemetery grounds and the lot sold shall be perpetually kept in good condition. Directly opposite to the land of complainant abutting upon Fort street, on the south side of the street, the lots of private owners are, for the most part, 100 feet in depth, and were assessed, as complainant's land was, upon the basis of frontage upon Fort street. The bill is filed to set aside the proceedings to pave Fort street, in so far as they affect, or purport to do so, the property of complainant, to cancel and set aside the sales of the property and free it from the cloud created by the apparent liens held by the city. It is charged that:

"(a) The assessment itself was not according to benefits.

"(b) The assessment district, as originally laid out, did not follow the provisions and requirements of the Detroit city charter.

"(c) The assessment of the entire property of your orator for the paving of this one portion of Fort street was so manifestly inequitable, unjust, and without facts or investigation to support it as to constitute a taking of your orator's property without due process of law, in violation of the Constitution of the State of Michigan and the Constitution of the United States.

"(d) Because the method adopted by the defendant city, whereby your orator's property was so assessed, violates the constitutional provision for uniformity in taxation.

"(e) Your orator's property is exempt from an assessment of this description.

"(f) It is beyond the power of the defendant, city of Detroit, to take property used for burial grounds in the manner claimed to have been employed in this proceeding.

"(g) There is no charter power in the defendant, city of Detroit, to assess, levy, or collect against your orator an assessment for paving purposes."

The defendant city answered, praying:

"(1) That unless the complainant elects, in and by its answer to this cross-bill (but not under oath, however, answer thereto on oath being hereby waived), to purchase said certificates of said unredeemable tax sales of parts 1, 2, and 3 of said assessment, and to redeem its said cemetery lands from said tax sales of part 4 of said assessment, then that it be decreed by the court that said cemetery lands belong to the defendant, the city of Detroit, by virtue of said unredeemable tax sales thereof, for the period of 99 years from the date of said sales respectively.

"(2) That in case the foregoing prayer of the defendant in its said cross-bill be not granted by the court, then that it be decreed by the court that said special assessment of $7,503.48, and the interest and penalties thereon for the nonpayment thereof by the complainant, at the rate provided for by the charter and laws of said city in such case made and provided, is a debt due from said complainant to said city and a lien on the said cemetery lands of complainant until paid, and that said lien be foreclosed, and that said lands be decreed to be sold by and under the direction of the court for the purpose of satisfying said debt and discharging said lands from said lien"; and for general relief.

The circuit judge who heard the cause was of opinion—

"that the proceedings followed in levying this assessment are plainly in violation of the fundamental principle upon which such assessments rest, as well as in violation of the provisions of the charter of the city of Detroit. The theory upon which an assessment is permitted is that the owner gets back the amount assessed in benefits from an enhanced value of the property. Cemetery property is dedicated to burial purposes, and the people who buy burial rights must be protected in the perpetual and exclusive use thereof. For this reason the property cannot be sold or incumbered. It has therefore no market value. The improvement may be a convenience to the complainant, as well as to the general public, but I fail to see in

what way it adds to the money. value of the cemetery. But assuming that such property can be assessed for local improvements, it is clear that, in these proceedings in placing the assessment, the provisions of the city of Detroit were not followed. The cemetery property consists of one entire parcel of such irregular .shape that it could not be equitably assessed in proportion to its frontage and according to its benefits. The benefits of the properties assessed .are supposed to be in proportion to their respective fronts, but under some circumstances they cannot, with proximate equality, be thus apportioned. The charter of the city of Detroit prescribes what action shall be taken when such a condition arises. Where the property is not platted into city blocks and lots:

" 'The common council shall designate such part or parts thereof for such assessment as shall correspond as near as practicable to the portion of the block or blocks nearest adjacent thereto, subject to like assessment.'

"In levying this assessment this provision of the charter was not followed. They did not designate a part of the cemetery property which would 'correspond as near as practicable' to the city lots abutting on the south side of Fort street. If they had done so, the part of the cemetery included in the assessment district would have been that portion abutting directly on Fort street and extending back about 100 feet or such a distance as would correspond to the other property assessed. Instead, they included the entire parcel, a part of which directly fronts on Dearborn avenue and a part on Ferndale avenue, nearly a mile away from Fort street. The law requires that the benefits shall be assessed according to the frontage, but the front-foot rule cannot be applied where only a small portion of such parcel of land as this abuts on the improvement. It could only be followed in making this assessment by proceeding as directed by the charter. As the assessment constitutes a lien upon the property, it will readily be seen that if the charter provision above referred to had been followed, a much smaller portion of complainant's property would have been sold. Including all of the property was inequitable and in violation of complainant's legal rights.

"I am also of the opinion that the method prescribed by the charter for the collection of assessments cannot be followed against cemetery property. It cannot be collected by sale. The legislature has expressly protected such property from sale on execution, or upon any other process of the courts, or by the association itself for any other purpose than that of burial. It was not intended that it should be diverted from the sacred use to which it was dedicated. People who bought burial rights in this cemetery did so in the belief that they were providing a permanent resting place for their dead. Their right to the perpetual and exclusive use of the cemetery for such purposes must be protected, and this can only be done by prohibiting a sale of the property."

The decree, from which defendant appeals, is in accordance with the prayer of the bill.

OSTRANDER, J. (*after stating the facts*). It is asserted by complainant that the only method provided by law for the collection of a paving tax in Detroit is by a sale of the property if the tax is not paid. This assertion is not disputed by defendant. Whether the city may sue the owner of the property as for a debt (see Charter, § 221), in any case where a special assessment for paving has been laid and is not paid, is not in this case a material question. It is clear that in the scheme for paying taxes each assessment constitutes "a lien, until paid, upon said lots or parcels of real estate," and the lien may be enforced by a sale of the property. Whether the defendant city had a lien upon complainant's property for the particular tax, enforceable by a sale of the property, is a question which is answered by reasoning which necessarily determines whether the property was exempt from the tax. It is impossible to consider whether the property of complainant is exempt from the particular tax or assessment, apart from the remedy provided for the collection of the tax. If the property is exempt from

the lien, it is exempt from the tax. In my opinion, the property here in question is exempt from the particular tax. It is exempt from the general taxes by virtue of 1 Comp. Laws, § 3830 (1 Comp. Laws 1915, § 4001); it is exempt from the particular tax by virtue of a settled State policy evidenced by the provisions in the charter of complainant and in other statutes. It was said by this court in *Avery* v. *Cemetery Co.*, 127 Mich. 125, 129 (86 N. W. 538, 540):

"It is the settled policy of this State, in common with the universal sentiment of mankind, to preserve and maintain the burial places of the dead. The legislature has, by express enactment, prohibited the sale, except for burial purposes, or mortgaging, of lands set apart for cemetery purposes. It has also in express terms provided for the exemption from levy and sale on execution, or upon any other final process of a court, of all cemeteries, etc., while in use as repositories of the dead. This was within the power of the legislature to do, and so careful has the legislature been to preserve such properties for burial purposes that it has also in express terms taken it out of the power of the court of chancery to decree satisfaction of any judgment out of such exempt property."

With respect to the particular tax the policy of the State is not less clear. Turning to the act, the charter of complainant, it is found that the premises by their dedication are irrevocably set apart for use as a burial place for the dead. The powers of the complainant are limited, and it can sell none of the land except for burial purposes unless "the same shall not be occupied or required for burial purposes, or for the uses of such cemetery." A laying out of the grounds, a plan, is required. It cannot alter the plan or design for laying out the land in a way to interfere with rights of burial already granted. It can execute no mortgage, lien, or incumbrance upon the land used for burial purposes, nor grant burial rights in any mortgaged lands. It is a duty imposed upon complainant to preserve good order

in the grounds, to see that they are well kept and in good condition, and after paying for the land to reserve at least two-thirds of all receipts derived from sale of burial rights, after payment of current expenses, for interest, improvements, and embellishing, until a permanent fund is created sufficient, when invested, to produce an income large enough to meet the expense of keeping the grounds perpetually in good condition. In effect, the complainant is a trustee to sell and convey lots for burial purposes, unable to create debts upon the faith of the property, unable to dispose of the property except for the designated and perpetual use. The land is "wholly exempt from taxation of any kind whatsoever," and no street, highway, railway, sewer, or canal can be opened or constructed through the grounds without the consent of the board of directors of complainant. By 3 Comp. Laws, § 11711 (3 Comp. Laws 1915, § 15485), injuring tombs, monuments, gravestones, or other memorials to the dead, or any fence or railing intended for protection or for ornament, or mutilating or destroying any tree, shrub, or plant placed or being within any cemetery, is made a misdemeanor. The obvious purpose of the act cannot be accomplished if the land of a cemetery association may be sold in an adversary or adverse proceeding. It is impossible to reconcile the purpose to bestow perpetual burial rights in land, and to punish any interference therewith, with a purpose to disturb those rights whenever a special improvement is made in the vicinity of the land.

It is the rule that words which exempt property from taxation are strictly construed, and it is familiar doctrine, too, that assessments, or taxes, for local special improvements are sustained upon the theory that the premises are benefited by the improvement. Such assessments are not taxes within the proper meaning of

the word "taxes," but represent a value or betterment added to the land itself. See a collection of cases in note to *In re Sixth Avenue West, Seattle,* 22 Am. & Eng. Ann. Cas. 1912A, 1047 (59 Wash. 41, 109 Pac. 1052). Applying these rules, it has been many times held that the mere fact that lands of a cemetery association are to be used solely for burial places does not exempt such lands from assessments for local improvements. Frequently, however, no observation has been given to the consequences of an enforced satisfaction of the tax. The power of the legislature to exempt cemeteries from assessments for local improvements cannot be doubted. *In re Starr Street,* 73 Misc. Rep. 380 (131 N. Y. Supp. 71) ; *City of Pittsburg* v. *Cemetery Ass'n,* 44 Pa. Super. Ct. 289; *Harvard College* v. *City of Boston,* 104 Mass. 470; *Illinois Cent. R. Co.* v. *City of Decatur,* 147 U. S. 190, 203 (13 Sup. Ct. 293), and cases cited. I construe our statutes as an exercise of this power, extending to every case in which the tax or assessment is by law made a lien upon the land enforceable by sale thereof. In this view, an answer to the defendant's prayer that a sale be now ordered by the court is found in the opinion given in *City of Louisville* v. *Nevin,* 10 Bush (Ky.), 549 (19 Am. Rep. 78), in which case an order for a sale of a cemetery to enforce a special assessment for street improvement was denied. In that case, unlike the one at bar, the lots in the cemetery were completely filled with graves from which no revenue was derived, and the trustee had no funds to pay the assessment. In the case at bar it is apparent that the corporation complainant will yet derive from sale of lots, or burial permits, a revenue. But, in view of the provisions of the act under which complainant exists, the principle to be applied in each case is, in my opinion, the same. The court said:

"The lot having been completely filled with graves,

and thus rendered useless for any other purpose than as a resting place for the dead, unless their graves are to be desecrated by being built over or dug up, or by the use of the property for the ordinary purposes of town lots, the chancellor would hesitate to lend his aid to subject it to sale. We know it has been intimated by courts for whose opinions we have a high regard that this is a matter of sentiment with which courts have nothing to do; but fortunately we are not reduced to the alternative to decree the sale of a graveyard already filled with the ashes of the dead, or of seeming to refuse to carry out the commands of the law. The chancellor will not decree that to be sold which cannot be lawfully used for the ordinary purposes to which property of a like character is commonly applied, and especially when there is no imaginable beneficial use to which it can be put by the purchaser which would not subject him to punishment under the penal statutes of the State."

See, also, *Mount Auburn Cemetery* v. *Cambridge,* 150 Mass. 12 (22 N. E. 66, 4 L. R. A. 836).

The defendant city had and has no lien upon the complainant's property resulting from the paving assessment, the sale of it cannot be sustained, and the deeds issued upon the sales and the records thereof must be canceled and set aside. Nor can a sale of the premises be now decreed by the court.

I have considered, although counsel for defendant has not suggested it, whether as a condition to granting the equitable relief asked for by complainant, in view of revenue to be derived by it from the continued sale of lots, and of a possible, if not probable, enhancement of values brought about by the improvement itself, complainant should be decreed to pay the tax, the decree to be enforced by sequestration of a part or of all of the current or future net profits of complainant. Objections to such a course are obvious. Defendant is insisting upon its rights under the proceedings taken in alleged conformity with its charter. As has been pointed out, it has acquired no rights in or to the land

here involved. Complainant is entitled to relief, not by reason of equitable considerations merely, but of right. Its land, as I have attempted to show, was exempt from the particular tax.

Without considering the other objections made to the tax, or to the method of levying it, the decree of the court below must be, and is, affirmed, with costs to complainant.

STONE, C. J., and MOORE, and PERSON, JJ., concurred with OSTRANDER, J.

BROOKE, J. (*dissenting*). I quite agree with my Brother OSTRANDER in holding that the lands of complainant devoted to cemetery purposes cannot be sold for the purpose of collecting a special assessment. To permit the title to be alienated for the collection of a special assessment would be to work exactly the same evils as would follow for the purpose of collecting a general assessment.

I do not agree, however, that 3 Comp. Laws, § 8406 (3 Comp. Laws 1915, § 11161), should be construed as relieving the lands of complainant, devoted to cemetery purposes, from a special assessment for street improvement. See 1 Cooley on Taxation (3d Ed.), p. 362 *et seq.;* also 2 Cooley on Taxation (3d Ed.), pp. 1234, 1235; 28 Cyc. p. 1132. The courts have very generally held that statutes exempting cemeteries from taxation do not exempt them from special assessments for the cost of paving streets abutting their property. See *In re Broad Street,* 165 Pa. 475 (30 Atl. 1007) ; *Newcastle City* v. *Stone Church Graveyard,* 172 Pa. 86 (33 Atl. 236) ; *City of Philadelphia* v. *Union Burial Ground Society,* 178 Pa. 533 (36 Atl. 172, 36 L. R. A. 263) ; *Illinois Cent. R. Co.* v. *City of Decatur,* 147 U. S. 190, 197 (13 Sup. Ct. 293) ; *Lefevre* v. *Mayor, etc., of Detroit,* 2 Mich. 587; *Buffalo Cemetery Ass'n* v. *City of Buffalo,* 118 N. Y. 61 (22 N. E. 962), affirming 43

Hun, 127; *Baltimore* v. *Green Mount Cemetery*, 7 Md.
517; *City of Lima* v. *Cemetery Ass'n*, 42 Ohio St. 128
51 Am. Rep. 809); *In re Sixth Avenue West, Seattle,*
22 Am. & Eng. Ann. Cas. 1912A, 1047 (59 Wash. 41,
109 Pac. 1052), and cases cited in note on page 1051,
decided June 14, 1910.

Our general tax law covering the subject (1 Comp.
Laws, § 3830, subd. 6 [1 Comp. Laws 1915, § 4001,
subd. 6]), while providing that the lands used exclu-
sively as burial grounds, etc., shall be exempt, pro-
vides:

"The stock of any corporation owning such burial
grounds shall not be exempt."

Defendant by the second prayer in its cross-bill asks
alternative relief to the following effect:

"That it be decreed by the court that said special
assessment    *    *    *    is a debt due from said com-
plainant to said city."

Section 221 of the charter of the city of Detroit
provides in part:

"And the said receiver shall have power in the name
of the city of Detroit to prosecute any person refusing
or neglecting to pay such taxes or any special assess-
ment by a suit in the circuit court for the county of
Wayne, and he shall have, use, and take all lawful
ways and means provided by law for the collection
of debts, to enforce the payment of any such tax or
any special assessment."

Section 231 in part provides:

"After which warrants for the collection of the
same may be issued, and such proceedings for the col-
lection thereof be had as are or shall be prescribed
by law, or by any ordinance or resolution of the com-
mon council."

The relief prayed for I think should be granted;
and, there being no dispute as to the amount of the
tax or the penalty and interest, a decree in favor of the
defendant city should be entered in this court.

The money may not be realized upon this decree from a sale of the lands of complainant, devoted to cemetery purposes, but any other assets of complainant which could be reached by execution would be liable. Under this disposition of the case the rights of the holders of burial privileges in the cemetery proper would be protected, and complainant should be compelled to bear its just proportion of the municipal burden caused by the special improvement.

The decree of the court below should be modified as indicated, but without costs to either party.

KUHN, BIRD, and STEERE, JJ., concurred with BROOKE, J.