WHITE CHAPEL MEMORIAL ASS'N *v.* WILLSON.

1. TAXATION—EXEMPTIONS—CEMETERIES—''INCLOSED''—STATUTES.
   Land inclosed on three sides by fence, and on fourth side partly by fence and balance by hedges and small trees, was ''inclosed'' within meaning of 2 Comp. Laws 1929, § 10447, exempting from taxation lands inclosed and set apart for cemetery purposes.

2. SAME—INTEREST IN LAND—EXEMPTIONS.

Where cemetery association, as assignee of vendees' interest in land contract, had received deed to part of land dedicated as cemetery at time road and drain taxes were assessed thereon, and thereafter acquired title to balance, said association *held*, to have such interest in said land at time suits were commenced as entitled it to seek relief from liens created by said assessments.

3. CEMETERIES—APPROVAL OF PLAT—TOWNSHIP BOARD OF HEALTH.

Requirement that cemetery plat must be approved by township board of health (1 Comp. Laws 1929, § 2656) is met by approval by township board, because said board acts as board of health (2 Comp. Laws 1929, § 6475).

4. SAME—TOWNSHIP BOARD—PRESUMPTIONS.

Meeting of township board at which cemetery plat was approved will be presumed to have been regularly called, although only three members were present.

5. CORPORATIONS—REPORTS—CEMETERY ASSOCIATION—COMPLIANCE WITH STATUTES—RIGHT TO RELIEF FROM TAX LIENS.

Failure of incorporated cemetery association to file corporation reports required by 2 Comp. Laws 1929, § 10123, does not bar its right to relief from tax liens created by unwarranted assessments against cemetery for road and drain taxes, where it has complied with provisions of Act No. 22, Pub. Acts 1932, waiving compliance with former statute.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted June 10, 1932. (Docket Nos. 82–85, Calendar Nos. 36,158–36,161.) Decided October 3, 1932.

Two bills by White Chapel Memorial Association, a Michigan corporation, against Albert W. Willson, Oakland county treasurer, and others to set aside certain special assessments for county road and drain purposes for the years 1927 and 1928. Two petitions by Oramel B. Fuller, auditor general, for the sale of lands for taxes above referred to. Cases heard together. From decree for defendants sustaining assessment of tax, plaintiff appeals. Reversed.

*Lucking, Van Auken & Sprague* (*Pelton & McGee* and *Fred J. Schumann,* of counsel), for plaintiff.

*George A. Cram,* for defendants county treasurer and drain commissioner and township treasurer.

*James H. Lynch,* for defendant board of county road commissioners.

SHARPE, J.   On July 9, 1925, Albert F. Pearce and his wife executed an option to sell 80 acres of land in the county of Oakland to C. J. Sanger and P. B. Raymond for the sum of $89,000.  This option was exercised on August 5, 1925, and a contract of sale executed.  The intent of the vendees was to use the land for cemetery purposes.  A plat thereof was prepared, in which Pearce and his wife and Sanger and Raymond joined, dedicating its use to such purposes, the same to be known as "White Chapel Memorial Association."  This plat was presented to and accepted by the township board of the township in which the land was situate on July 22, 1925. It appears, however, that but three of the members of the board were present at this meeting.

On August 18, 1925, Sanger and Raymond assigned their interest in the land contract to the plaintiff, White Chapel Memorial Association, which had been theretofore incorporated under the provisions of Act No. 12, Pub. Acts 1869 (2 Comp. Laws 1929, § 10440 *et seq.*).  Between that date and May 9, 1927, the association received deeds of about 41 acres of this land, and the title to the balance was thereafter acquired.

After securing the contract for the purchase of the property, the board of directors of plaintiff adopted a resolution approving the plat and thereafter proceeded to landscape and develop the prop-

erty, and at the time of the hearing there were many burials thereon.

The question presented in these cases is whether this land was liable to a Covert road tax levied thereon for the years 1927 and 1928, and a drain tax for the year 1927. The assessment roll for the drain tax was confirmed on May 9, 1927, and that of the road tax on July 25th of that year.

Section 8 of the act under which plaintiff was incorporated (section 10447) provides:

"All the lands of said corporation inclosed and set apart for cemetery purposes, and all rights of burial therein, shall be wholly exempt from taxation of any kind whatsoever."

The trial court, without consideration of the other questions presented, found that the land was "not inclosed by a cemetery fence until after the date when the special assessments became a lien," and entered a decree in each of the cases denying the plaintiff the relief prayed for. The plaintiff has appealed therefrom.

Clarence J. Sanger, one of the promoters of the enterprise, and the president of the plaintiff association at the time of the hearing, testified:

"Q.  *  *  *  Now, on May 9, 1927, what operations had been started and were going on in your park or your cemetery?

"A. The drainage system had been completed, the underground sprinkling system was well under construction, the driveways were fully graded and I think construction under way on the driveways, I mean laying of the concrete, the entire park was being scalped, I mean by that, top black dirt was being taken off and piled up and the subsoil being shifted to conform to the grades that we had laid out for our driveways; material was being shipped

in for the entrance portals and foundation being installed for the entrance portals at about that time also.

"*Q.* This operation you have spoken of as scalping, is that in connection with landscaping?

"*A.* In connection with the landscaping.

"*Q.* Of the cemetery?

"*A.* Yes, sir.

"*Q.* Was the park inclosed at that time?

"*A.* Park was inclosed at that time; it was inclosed with a fence on three sides, partly on the fourth side and then there were raw hedges and small trees the balance.

"*The Court:* Is that a fence that had been built by the Memorial Park Association?

"*A.* No, sir, park fence hadn't been put yet at that time.

"*Q.* But it was completely inclosed at that time and used for cemetery purposes?

"*Mr. Lynch:* Object to that, that is assuming, that is a conclusion.

"*Mr. Schumann:* That is not a conclusion to say it was completely inclosed.

"*Mr. Lynch:* Why didn't you stop there?

"*Q.* When was the date when you installed the fence that is around the cemetery at the present time?

"*A.* I think that was in the, along late in the summer or early fall; that was started late in the summer or early fall of 1927, I am not positive regarding that date."

It was upon this testimony that the finding was based.

The word "enclose" or "inclose" is defined in Webster's New International Dictionary as "To surround; to encompass; to bound, fence, or hem in, on all sides." When this word was used in the act of 1869, its meaning was doubtless more extended

than at the present time when the rights of ownership and use of property are less dependent upon the use of fences to inclose it, if a claim of ownership or use is otherwise clearly indicated. This is somewhat evidenced by the language of the general tax law (1 Comp. Laws 1929, § 3395), which exempted from taxation—

"All lands used exclusively as burial grounds, and the rights of burial therein, and the tombs and monuments therein, while reserved and in use for that purpose: *Provided,* That the stock of any corporation owning such burial grounds shall not be exempt."

A quite similar provision appeared in section 3 of Act No. 9, Pub. Acts 1882.

In *Kimball & Fink* v. *Carter,* 95 Va. 77, 85 (27 S. E. 823, 38 L. R. A. 570), in which an action was brought against a railroad company under a statute which required its right of way through inclosed lands to be fenced, it was said:

"Inclosed lands, therefore, are lands surrounded by a fence; and a fence is a visible or tangible obstruction, which may be a hedge, ditch, wall, or a frame of wood, or any line of obstacle interposed between two portions of land so as to part off and shut in the land, and set it off as private property."

In *Avery* v. *Forest Lawn Cemetery Co.,* 127 Mich. 125, 129, the section of the cemetery act and of the general tax law were both cited, and the court said:

"It is the settled policy of this State, in common with the universal sentiment of mankind, to preserve and maintain the burial places of the dead. The legislature has, by express enactment, prohibited the sale, except for burial purposes, or mortgaging, of lands set apart for cemetery purposes.

It has also in express terms provided for the exemption from levy and sale on execution, or upon any other final process of a court, of all cemeteries, etc., while in use as repositories of the dead. This was within the power of the legislature to do, and so careful has the legislature been to preserve such properties for burial purposes that it has also in express terms taken it out of the power of the court of chancery to decree satisfaction of any judgment out of such exempt property.''

In *Woodmere Cemetery Ass'n* v. *City of Detroit,* 192 Mich. 553, the liability of the plaintiff, organized under the same act as this plaintiff, to pay a special assessment was presented. The boundaries on three sides of the land in question were said to be streets, and ''its western boundary is a creek, which has an irregular course, generally from north to south.'' While the court divided on the right to sequester the funds of the plaintiff to pay the tax, all were agreed that the lands, being devoted to cemetery purposes, could not be sold for the purpose of collecting the special assessment.

Placing a reasonable and fair construction upon the answer of Mr. Sanger to the question put to him:

''Park was inclosed at that time; it was inclosed with a fence on three sides, partly on the fourth side, and then there were raw hedges and small trees the balance,''—

in our opinion it must be held that this land was ''inclosed'' within the meaning of that word as used in the statute at the time the taxes were levied against it in 1927, and that the lien created by the tax levied thereon for that year and the year 1928 should be removed therefrom.

Additional questions are raised by counsel for the county treasurer and drain commissioner:

1. It is claimed that the plaintiff was not the owner of the land at the time the assessments were made. Reference has been made to the dates and instruments under which it acquired title. It had such an interest at the time the bills were filed as entitled it to seek relief from the liens created by the assessments.

2. It is urged that under the statute (1 Comp. Laws 1929, § 2656) a cemetery plat must be approved by the township board of health, and that the action taken by the township board was inoperative and void. It is also urged that the action thus taken was invalid because but three members of the board were present. The township board acts as a board of health (2 Comp. Laws 1929, § 6475). Its meeting will be presumed to have been regularly called. *Boyce* v. *Auditor General,* 90 Mich. 314.

3. It is also insisted that the failure of the plaintiff to file the reports required by section 10123, 2 Comp. Laws 1929, bars its right to relief. There is evidence that its reports as made were rejected by the secretary of State. The uncertainty in the law resulted in the passage of Act No. 22, Pub. Acts 1932, under which all forfeitures by reason thereof were waived upon compliance with the provisions thereof, and this it appears that plaintiff has done.

It follows that the plaintiff was entitled to relief in each of these cases as prayed for in its bills of complaint, and decrees therefor may be entered in this court. As the questions presented were of a public nature, we do not think that any costs should be allowed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.