*In re* PETITION OF AUDITOR GENERAL.

PETITION OF PERRY MOUNT PARK CEMETERY ASSN.

1. STATUTES—CONSTRUCTION—TAXATION.
   A taxing statute is construed in favor of the taxpayer.

2. TAXATION—CONSTRUCTION OF STATUTES—EXEMPTIONS.
   Generally one who claims to be exempt from the coverage of a general taxing act must come within a strict construction of the exemption words as exemptions from taxation are not favored.

3. SAME—RURAL CEMETERY ASSOCIATION LANDS—EXEMPTIONS—LIBERAL CONSTRUCTION OF STATUTES.
   Provision of statute exempting lands of rural cemetery association from taxation should be liberally construed (2 Comp. Laws 1929, § 10447).

4. SAME—RURAL CEMETERY LANDS—EXEMPTION—RESERVES—ABANDONMENT.
   The casual use of reserve lands belonging to a rural cemetery association, not presently needed for burial use, for agricultural

purposes by the indigent without consideration is not regarded as an abandonment of the original object of lands set aside for cemetery purposes in an amount not exceeding the legal limit (2 Comp. Laws 1929, §§ 10445, 10447).

5. SAME—EXEMPTION—DISREPAIR OF CEMETERY LAND BARRIERS.
   Lands of rural cemetery association which were originally inclosed by barriers that have fallen into disrepair but which are still sufficiently identified and still within the purpose for which they were dedicated are exempt from taxation (2 Comp. Laws 1929, § 10440 *et seq.*).

Appeal from Oakland; Hartrick (George B.), J. Submitted April 16, 1940. (Docket No. 103, Calendar No. 40,876.) Decided June 19, 1940.

In the matter of the petition of George T. Gundry, Auditor General of the State of Michigan, for the sale of certain lands for taxes assessed thereon. Petition of Perry Mount Park Cemetery Association for cancellation of taxes assessed on lands owned by it. City of Pontiac intervened. From decree cancelling taxes, Auditor General and intervener appeal. Affirmed.

*Erwin O. Slater,* for petitioner.

*William A. Ewart,* for intervener.

*Harry J. Merritt,* for County of Oakland and Auditor General.

BUTZEL, J. The question presented by this appeal is whether certain lands owned by plaintiff cemetery association are exempt from taxes assessed by defendant city of Pontiac.

Plaintiff was incorporated in 1921 under Act No. 12, Pub. Acts 1869, as amended (2 Comp. Laws 1929, § 10440 [Stat. Ann. § 21.871]), which provides for

the formation of corporations to establish rural cemeteries. Section 8 of this act (2 Comp. Laws 1929, § 10447 [Stat. Ann. § 21.878]) declares that:

"All the lands of said corporation inclosed and set apart for cemetery purposes, and all rights of burial therein, shall be wholly exempt from taxation of any kind whatsoever."

In the year of incorporation plaintiff acquired and designated for cemetery purposes about 102 acres of land in the township of Pontiac, Oakland county, which land was later brought within the city of Pontiac by annexation. Perry street in the city of Pontiac extends northeastward from the center of the city and cuts through the lands so that a section of about 70 acres lies on the southerly side of the road, and the balance lies on the northerly side. The 70-acre plot is a well-defined and inclosed burial ground, and it is not involved in the issues before us. The land on the northerly side of Perry street is bisected by a five-acre fenced plot which is the site of a used automobile parts business. Plaintiff has about 15 acres to the west of this plot and about 17 acres to the east thereof. At the time of acquisition by plaintiff, these two sections appear to have been inclosed by farm fences, but because of the widening of Perry street and the road which forms the northernmost boundary, the fences on these sides were torn down and the fences on the other boundaries have fallen into disrepair. A six-foot board fence forms the east and west boundaries adjoining the five-acre plot, between the two parcels on the north side of Perry street. A small triangle of the 15-acre plot was sold under land contract to a private party. A stillborn infant was buried in the 17-acre plot in 1931, and another infant of unstated age was buried in the 15-acre plot in 1934; these are the only interments in the

land in question. A machine was run through one of the parcels to clear a roadway in 1931 but there does not appear to have been any grading or other work done since that time. The total expenditure for improvement appears to have been about $200. The property has for some time been under cultivation with corn, potatoes, et cetera, by third persons through plaintiff's gratuitous permission. No assessments were made on the land until 1931; after notice of an assessment for that year was received, it is claimed that an agent of plaintiff protested and was given assurance that it would be taken care of, but it was never stricken from the rolls. Assessments were made for the years 1932, 1933, 1934, 1935, 1936 and 1937, but on objection the 1936 assessment was removed. Plaintiff filed a petition praying that the lands be stricken from the assessment rolls and that all the assessments be cancelled. The trial court granted the relief except as to the triangle sold on land contract. The case is before us on defendant's appeal.

It is defendant's claim that the lands were not properly inclosed, that the cultivated use was inconsistent with cemetery use under the statute, and that, therefore, the cemetery use had been abandoned. The trial court ruled that the word "inclosed" of the statute "means no more than lands set apart or set off or sufficiently identified by definite boundaries, subject of ascertainment." He further stated in his opinion:

"The statute cannot be construed in objective the maintenance of cemetery fences. It is for the purpose of having certain identity of set-aside lands. The establishment of the area according to a plan and burials in separate sections since the dedication are in accord with the cemetery use and refute any allegation of use inconsistent with or repugnant to

such a situation.  Meager development during the past few years is readily understandable.  Free use of lands for garden plots, or portions not needed for immediate development by the unemployed or welfare parties should not be used as subterfuge to penalize the association.  This is the extent of the agricultural use shown by the testimony."

The statute declares that all lands of the rural cemetery corporation "inclosed and set apart for cemetery purposes * * * shall be wholly exempt from taxation of any kind whatsoever."  We are guided in interpreting these words by the rule that a taxing statute is construed in favor of the taxpayer.  *J. B. Simpson, Inc.,* v. *O'Hara,* 277 Mich. 55; *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich. 260; *Standard Oil Co.* v. *State,* 283 Mich. 85; *Plymouth United Savings Bank* v. *Township of Plymouth,* 289 Mich. 307. Generally one who claims to be exempt from the coverage of a general taxing act must come within a strict construction of the exemption words.  *Woodmere Cemetery Association* v. *City of Detroit,* 192 Mich. 553; *Remus* v. *City of Grand Rapids,* 274 Mich. 577.  "Exemptions from taxation are not favored." *Doane* v. *Railway Co.,* 247 Mich. 542.  Nevertheless we are inclined toward liberality in construing this exemption because of the expressed policy we have "in common with the universal sentiment of mankind, to preserve and maintain the burial places of the dead."  *Avery* v. *Forest Lawn Cemetery Co.,* 127 Mich. 125; *Woodmere Cemetery Association* v. *City of Detroit, supra; White Chapel Memorial Association* v. *Willson,* 260 Mich. 238. The amount of acreage set aside for cemetery purposes did not exceed the legal limit.*  The record does not show that there was ever an abandonment for cemetery pur-

---

\* See 2 Comp. Laws 1929, § 10445 (Stat. Ann. § 21.876).—REPORTER.

poses of the land exempted by the decree. The casual use of the property by the indigent for farming purposes without consideration is not to be regarded as an abandonment of the original object. Within the acreage limit of the statute, ample provision may be made for the needs of the future, and the reserve will be entitled to protection from assessments. In *White Chapel Memorial Park Association* v. *Willson, supra,* we stated that the word "inclose" as used in the act of 1869 had a meaning "doubtless more extended than at the present time when the rights of ownership and the use of property are less dependent upon the use of fences to inclose it, if a claim of ownership or use is otherwise clearly indicated." In the case before us, although the original barriers have fallen into disrepair, the land is sufficiently identified and is still within the purpose for which it was dedicated.

The decree is affirmed. Costs to appellee.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.