ACACIA PARK CEMETERY ASSOCIATION v SOUTHFIELD
TOWNSHIP

Docket No. 77-615. Submitted March 15, 1978, at Detroit.—Decided
May 10, 1978. Leave to appeal applied for.

The Township of Southfield specially assessed Acacia Park Ceme-
tery Association for a drain improvement. Acacia refused to
pay the assessment and commenced an action against the
township to set aside the special assessment and to enjoin the
defendant township from attempting to collect it on the
grounds that as a rural cemetery association plaintiff was
exempt from paying a share of the special assessment for the
drain improvement. Summary judgment was granted for plain-
tiff, exempting it from the special assessment, Oakland Circuit
Court, Robert B. Webster, J. Defendant township appeals. *Held:*

Rural cemetery associations are not exempt from special
assessments where they may have assets other than burial land
and funds received for the care and maintenance of burial land
with which to satisfy such special assessments.

Reversed.

1. TAXATION—PROPERTY TAXES—EXEMPTIONS—SPECIAL ASSESSMENTS.

Generally, a constitutional or statutory exemption from property
taxes is considered an exemption from ordinary taxes only and
not from special assessment liability for local improvements.

2. TAXATION—PROPERTY TAXES—SPECIAL ASSESSMENT—CEMETERIES—
PRESERVATION OF BURIAL RIGHTS.

The policy of preserving burial rights, which has long been
recognized in Michigan, does not permit the sale of cemetery
land to satisfy a special assessment.

3. TAXATION—PROPERTY TAXES—SPECIAL ASSESSMENTS—EXEMPTIONS
—CEMETERIES—OTHER ASSETS.

A cemetery is not exempt from a special assessment for local
improvements where the cemetery has assets other than burial

REFERENCES FOR POINTS IN HEADNOTES
[1] 70 Am Jur 2d, Special or Local Assessments § 45.
[2, 3] 70 Am Jur 2d, Special or Local Assessments §§ 64–67, 180.

land and funds reserved for the care and maintenance of burial land with which to satisfy the special assessment.

*Clark, Klein, Winter, Parsons & Prewitt* (by *Richard C. Marsh),* for plaintiff.

*Dillon & Lang,* for defendant.

Before: R. M. MAHER, P. J., and V. J. BRENNAN and N. J. KAUFMAN, JJ.

PER CURIAM. Defendant Township of Southfield specially assessed plaintiff Acacia Park Cemetery Association for improvements to the Rummel Relief Drain. Plaintiff is a Michigan corporation organized as a rural cemetery association pursuant to MCL 456.101 *et seq.;* MSA 21.871 *et seq.* It was assessed a total of $144,981.81 plus interest, to be paid over a 29-year period.

Plaintiff filed a complaint in circuit court seeking to set aside the special assessment and to enjoin the defendant township from attempting to collect it on the grounds that Acacia Park was exempt from paying its share of the special assessment for the drain improvement and that the procedures followed in assessing the cemetery were improper.

On September 6, 1976, plaintiff moved for summary judgment on the basis of GCR 1963, 117.2(3), no genuine issue as to any material fact. The trial court granted plaintiff's motion on February 3, 1977, on the ground that plaintiff was exempt from the special assessment. Defendant Township of Southfield appeals as of right.

The sole issue before the Court is whether or not the Acacia Park Cemetery Association is exempt from liability for special assessments, such as that

levied by the Township of Southfield. The rural cemetery act provides in pertinent part:

"All the lands of said corporation enclosed and set apart for cemetery purposes, and all the rights of burial therein, shall be wholly exempt from taxation of any kind whatsoever." MCL 456.108; MSA 21.878.

The General Property Tax Act at MCL 211.7; MSA 7.7 also provides for an exemption.

"The following property shall be exempt from taxation:

\* \* \*

"Sixth, All lands used exclusively as burial grounds, and the rights of burial therein, and the tombs and monuments therein, while reserved and in use for the purpose. The stock of any corporation owning such burial grounds shall not be exempt."

Generally, a constitutional ·or statutory exemption is considered an exemption from ordinary taxes only and not from special assessment liability for local improvements. 70 Am Jur 2d, Special or Local Assessments, § 45 p 880; 84 CJS, Taxation, § 229, p 445.

Michigan is in accord with the general policy, as is confirmed in *Big Rapids v The Board of Supervisors of Mecosta County,* 99 Mich 351; 58 NW 358 (1894).

"Other property is also exempt from taxation, such as churches, hospitals, cemeteries, etc., but as to these there is no implied exemption; \* \* \* It has therefore been repeatedly held that, when these are mentioned as exempt in a general tax law, the exemption applies only to the taxes mentioned in the general law, and not to those which are of a private and local character, such as assessments for sewers, sidewalks, and the like,

which are made according to the benefits conferred. This is the well-established rule, to which it is unnecessary to cite authorities." 99 Mich at 353.

See also *The Lakeshore & MSR Co v Grand Rapids,* 102 Mich 374; 60 NW 767 (1894), and *In re Petition of Auditor General,* 226 Mich 170; 197 NW 552 (1924).

The rule that an exemption from general property taxes does not extend to special assessments does not stand isolated, however. As defendant points out there is another policy which conflicts with, or at least limits, the liability of a cemetery association for special assessments liability.

In *Avery v Forest Lawn Cemetery Co,* 127 Mich 125; 86 NW 538 (1901), the Court set forth this second policy.

"It is the settled policy of this State, in common with the universal sentiment of mankind, to preserve and maintain the burial places of the dead. The legislature has, by express enactment, prohibited the sale, except for burial purposes, or mortgaging, of lands set apart for cemetery purposes. It has also in express terms provided for the exemption from levy and sale on execution, or upon any other final process of a court, of all cemeteries, etc., while in use as repositories of the dead. This was within the power of the legislature to do, and so careful has the legislature been to preserve such properties for burial purposes that it has also in express terms taken it out of the power of the court of chancery to decree satisfaction of any judgment out of such exempt property." 127 Mich at 129–130.

Confronting one another, then, are the rule that exemption from general taxation does not include exemption from special assessment liability and the policy of preserving and protecting the burial places of the dead. We do not believe this latter

policy forecloses application of the "no exemption from special assessment" rule. An examination of the relevant cases which have developed the law discloses the reason for our belief.

In *Woodmere Cemetery Ass'n v Detroit,* 192 Mich 553; 159 NW 383 (1916), plaintiff had incorporated in 1869 under the original rural cemeteries act. Defendant city paved one of the streets bordering on plaintiff's property and assessed plaintiff for part of the cost. Plaintiff refused to pay the tax and the city purchased the property at a tax sale. Plaintiff did not redeem the property but brought suit to set aside the assessment and the tax sale. The trial court set aside the assessment and tax sale, holding in part that the defendant city could not collect against cemetery property by sale because cemetery property could not be diverted from burial use.

By a divided panel, the Supreme Court affirmed the trial court, stating:

"The obvious purpose of the act cannot be accomplished if the land of a cemetery association may be sold in an adversary or adverse proceeding. It is impossible to reconcile the purpose to bestow burial rights in land, and to punish any interference therewith, with a purpose to disturb those rights whenever a special improvement is made in the vicinity of the land." 192 Mich at 561.

For purposes of this case, it is significant that the Court noted: "It is impossible to consider whether the property of complainant is exempt from the particular tax or assessment, apart from the remedy provided for the collection of tax." 192 Mich at 559.

The opinion of the Court concerned itself solely with a sale of burial land to satisfy a special

assessment. The exemption and the remedy were considered as one. Following the state policy of preserving the burial places of the dead, the Court held that, as the remedy was the sale of those burial places, the cemetery was necessarily exempt from the assessment because those burial places could not be sold.

It is paramount that the holding of *Woodmere* be read in context. Contrary to plaintiff's assertion, *Woodmere* does not stand for the rule that the property of rural cemeteries is exempt from special assessment. Rather, it supports the much more limited concept that a cemetery is exempt from a special assessment when the only means of paying the assessment is through proceeds from the sale of burial land.

Guided by this principle, the Court next considered the matter in *White Chapel Memorial Ass'n v Willson,* 260 Mich 238; 244 NW 460 (1932). In *White Chapel,* plaintiff cemetery was levied against by Oakland County for road and drain assessments. The cemetery sued the Oakland County Treasurer, and the auditor general sued the cemetery for the sale of lands to pay the assessments. The cases were heard together. The Court framed the issue as follows: "The question presented in these cases is whether this land was liable to a Covert road tax levied thereon for the years 1927 and 1928, and a drain tax for the year 1927." 260 Mich at 241.

The Court was again concerned with the sale of lands to satisfy special assessments. After determining that the lands were within the contemplation of the statute, the Court set aside the assessment but only because the assessment was to have been paid from the proceeds of the sale of land set aside for burial purposes.

The limited holdings of *Woodmere* and *White Chapel* were somewhat expanded in *Forest Hill Cemetery Co v Ann Arbor,* 303 Mich 56; 5 NW2d 564 (1942). Forest Hill was not organized pursuant to the rural cemetery act, but the exemption of the General Property Tax Act did apply. The cemetery had been specially assessed for the paving of roads which bounded it. The city attempted to reach land as well as the personal property of the cemetery in satisfaction of the special assessment. Plaintiff's personal property consisted principally of funds which were reserved and earmarked for the care and upkeep of the cemetery. The Court concluded that Ann Arbor could not collect the special assessment by levy and sale of plaintiff's personal property. It found that:

"It is impossible to reconcile the State's policy to 'preserve and *maintain* the burial places of the dead' with any policy permitting the levy and sale of any part of the cemetery company's personal property which is necessary for the care and maintenance of the cemetery." 303 Mich at 62. (Emphasis in original.)

Thus, in *Forest Hill* the Court enlarged state policy from one of preserving only burial lands to one of protecting not only the lands but the funds obtained and accumulated for the care and maintenance of those lands.

In the most recent case, *Royal Oak v Roseland Park Cemetery Ass'n,* 22 Mich App 651; 177 NW2d 702 (1970), the plaintiff had levied a special assessment against defendant, a rural cemetery corporation, for the costs of constructing a sidewalk adjacent to defendant's property. When the cemetery failed to pay the assessment, the plaintiff city brought suit to collect the delinquency. The city was granted summary judgment. Defendant contended on appeal that it was not subject to suit because it was exempt from special assessments.

The Court did not agree. It acknowledged *Woodmere* and *Forest Hill* but held that, inasmuch as Roseland Park did not allege that it lacked assets apart from its land and perpetual care fund, the cemetery did have assets from which the special assessment could be paid.

Implicit in the Court's opinion is the belief that exemption from general property taxation does not extend to liability for special assessments. Yet the Court is not unmindful of the policy in Michigan of preserving burial rights. That policy is not offended by the Court's resolution. It allows the plaintiff city to seek a personal judgment holding defendant liable in debt in order to collect the special assessment from assets other than land and the cemetery's perpetual care fund.

Case law in Michigan supports the decision in *Roseland Park.* Our Supreme Court cases have refused to permit the sale of land to satisfy a special assessment. The Supreme Court, at least in the case of nonprofit cemeteries, has not permitted the use of funds reserved for the care and maintenance of burial lands to be used for the satisfaction of special assessments. When such property comprises the only available assets from which an assessment can be satisfied, the courts have necessarily found the cemetery exempt from special assessment liability. But when other assets are available for collection, no such exemption exists.

We deal here not with the question of collection but solely with the question of exemption. In *Woodmere, White Chapel* and *Forest Hills,* the two questions were intertwined. When, as in the case before us, they are not, we hold that no exemption from special assessment exists. The means and manner of collection are a matter for another suit.

Reversed. No costs, a public question.